Opinion issued December 4, 2008














In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00446-CR
____________

BRIAN THOMAS KIRSCH, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from County Criminal Court at Law No. 8
Harris County, Texas
Trial Court Cause No. 1383625
 



O P I N I O N

          Appellant, Brian Thomas Kirsch, appeals from a judgment that sentences him
to 45 days in jail for the misdemeanor offense of driving while intoxicated (DWI). 
See Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). Appellant pleaded not guilty
to the jury, was found guilty by the jury, and sentenced by the trial court. In his third
through sixth points of error, appellant asserts the evidence is legally and factually
insufficient to sustain the conviction. Appellant’s first and seventh points of error
challenge the trial court’s denial of the motion to suppress the medical records and
the evidence obtained from the black box in the car he was driving. In his sixth point
of error, appellant contends the trial court erred by instructing the jury that it could
convict appellant if it determined that the alcohol concentration in his blood was
above the legal limit of 0.08. We conclude that the evidence is legally and factually
sufficient to sustain the conviction, that the trial court properly denied the motions to
suppress, and that the trial court properly instructed the jury that it could convict by
finding intoxication under the 0.08 definition of intoxication. We affirm. 
Background
          Appellant was a deputy for the Harris County Sheriff’s Office. Paul Reese, a
Houston Police Department officer who coordinated security patrol for the southwest
Houston neighborhood of Pine Shadows, hired appellant to patrol Pine Shadows at
night. During his shift, appellant was involved in an automobile accident.
          The accident occurred after appellant drove the security car outside the Pine
Shadows neighborhood to north Houston near Intercontinental Airport. Appellant
was driving southbound in the right-hand lane of the feeder road when he collided
with Jesse Gomez, who was driving a tractor trailer. Gomez was also driving
southbound on the same feeder road. Gomez, who was in the middle lane, intended
to make a wide right-hand turn at the next intersection. He checked his mirrors for
cars to his right. Seeing one car in the middle lane approximately 300 feet behind
him, Gomez decided to turn right from the middle lane. Gomez put on his right turn
signal, slowed from 30 to 35 miles per hour (m.p.h.) to 15 to 20 m.p.h., and began to
turn right. As the truck was turning, Gomez felt an impact great enough to skid his
78,000-pound load sideways. Gomez ran to see what hit his truck, discovered
appellant unconscious in the security car, and asked someone nearby to call 911. 
          Deputy Wilkie, a traffic accident investigator for the Harris County Sheriff’s
Department, arrived at the scene while first responders were still trying to remove
appellant from the security vehicle. Having no indication that this accident was
caused by alcohol consumption, Wilkie conducted a standard accident investigation.
Wilkie faulted Gomez for making an improper turn but did not ticket him.
          When emergency personnel arrived on the scene, they removed appellant from
the security car and transported him to Ben Taub Hospital by ambulance. One
paramedic testified that, on the way to the hospital, she detected the presence of
alcohol by an odor in appellant’s blood but did not detect alcohol on his breath. 
Paramedics treated appellant’s case as a head injury. 
          Appellant regained consciousness at the hospital but refused to speak and only
sporadically followed commands. Dr. Becker, the emergency center chief at Ben
Taub, suspected that appellant’s uncooperative behavior was the result of alcohol
rather than head trauma since appellant seemed to comprehend but intentionally
disregard commands and requests for information. In order to correctly diagnose the
situation, Dr. Becker ordered a blood-alcohol level, a toxicology screen, and a
computed axial tomography (CAT) scan of the head. The CAT scan revealed
bleeding on the brain. The blood-alcohol level was 0.10. Without a request from law
enforcement and without appellant’s consent, hospital personnel informed Houston
deputies, who had come to the hospital to support their fellow deputy, about the
results of the blood alcohol test. 
          Reese contacted Wilkie about retrieving some personal items from his
impounded security vehicle, and Wilkie agreed to meet him at the impound lot. 
When Reese arrived, Wilkie and another officer were attempting to download
information from the vehicle’s “black box,” which, in General Motors vehicles like
this one, stores data about a vehicle’s actions for five seconds prior to air bag
deployment. Reese retrieved his personal items and told the two officers to “do what
you need to do” with the security car to complete the investigation. The officers did
not have the cable required to download information from the black box, so fellow
investigator Swango returned a couple days later, removed the black box from the
vehicle, and downloaded the information using a private accident reconstructionist’s
cable. The black box recorded appellant as driving 69 m.p.h. five seconds before the
crash, 69 m.p.h. at four seconds, 68 m.p.h. at three seconds, 68 m.p.h. at two seconds,
and 67 m.p.h. at one second. Swango testified that, since the security vehicle left skid
marks on the pavement but the black box failed to register brake application,
appellant must have applied his brake less than one second prior to the crash. In
addition to the black box, a search of the car revealed two Smirnoff bottle caps.
          Appellant filed a motion to suppress evidence of medical records and blood test
results, which the trial court denied. The motion asserted that the medical records
were obtained in violation of the Health Insurance Portability and Accountability Act
(HIPAA) and without probable cause, without a search warrant, without a court order,
and without a valid subpoena, grand jury subpoena, or other lawful manner to obtain
the records. 
          At trial, the jury was instructed in the DWI case that “‘[i]ntoxicated’ means not
having the normal use of mental or physical faculties by reason of the introduction
of alcohol or having an alcohol concentration of 0.08 or more.” The application
paragraph allowed the jury to convict appellant under either alternative.        
Sufficiency of the Evidence
          Appellant challenges the legal and factual sufficiency of the evidence to sustain
the conviction for DWI. 
          A. Applicable Law 
          In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jurors are the exclusive judges of
the facts, the credibility of the witnesses, and the weight to give their testimony. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). A jury is entitled
to accept one version of the facts and reject another, or reject any part of a witness’s
testimony. Id. “Each fact need not point directly and independently to the guilt of
the appellant, as long as the cumulative force of all the incriminating circumstances
is sufficient to support the conviction.” Hooper v. State, 214 S.W.3d 9, 13 (Tex.
Crim. App. 2007).
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set aside the verdict only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
“clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 
          A person commits the offense of DWI if “the person is intoxicated while
operating a motor vehicle in a public place.” Tex. Penal Code Ann. § 49.04(a). 
The Texas Penal Code defines “intoxicated” as:
          (A)    not having the normal use of mental or physical faculties
by reason of the introduction of alcohol . . . into the body; 
or 
          (B)    having an alcohol concentration of 0.08 or more.
 
Id. § 49.01(2) (Vernon 2003).                      
          B. Analysis of Sufficiency of Evidence to Establish DWI
          In points of error three through six, appellant contends the evidence is legally
and factually insufficient to show that he lost the normal use of his mental or physical
faculties. Appellant explains that the State’s witnesses were unable to eliminate head
trauma as the cause of appellant’s behavior at the hospital and that appellant’s
delayed braking indicates complainant turned into appellant unexpectedly, not that
complainant was impaired. Within these points of error, appellant also asserts that
the evidence is legally and factually insufficient to show that the alcohol
concentration in his blood was above the legal limit at the time he was driving
because the State failed to extrapolate his blood-alcohol test results to prove his
blood-alcohol level at the time of the accident. 
                    1. Legal Sufficiency Analysis of Evidence of DWI
          Viewing the evidence in a light most favorable to the jury’s verdict, the
evidence shows that appellant was guilty of driving while intoxicated. Appellant’s
blood-alcohol level was 0.10 approximately 80 minutes after the accident occurred. 
Though the State did not introduce extrapolation testimony at trial, appellant’s blood-alcohol results were probative evidence that he had consumed alcohol on the night
of the accident. See State v. Mechler, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). 
Although appellant experienced head trauma, Dr. Becker suspected that appellant’s
uncooperative behavior was the result of alcohol rather than head trauma. According
to information downloaded from the black box, appellant delayed applying his brake
until less than one second before impact with the tractor trailer. Appellant argues that
the brake timing does not indicate impairment because the truck’s right-hand turn was
unexpected, but viewed in a light favorable to the jury’s verdict, the brake timing
supports the inference that the delayed response was caused by alcohol. Appellant’s
excessive speed, nearing 70 m.p.h. on the feeder road, also indicates impaired
judgment. Viewing the evidence in the light most favorable to the verdict, we
conclude that a rational trier of fact could have determined beyond a reasonable doubt
that appellant lacked the normal use of his mental or physical faculties by reason of
intoxication when he crashed into Gomez’s truck. 
          Having determined the evidence is legally sufficient to support the verdict
based on lack of normal use, we do not reach the alternative means by which the State
could prove intoxication based on proof that appellant’s blood alcohol concentration
was above 0.08. See Bagheri v. State, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003). 
We hold that the evidence is legally sufficient to show that a rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. See
King, 29 S.W.3d at 562. We overrule points of error three and five. 
                    2. Factual Sufficiency Analysis of Evidence of DWI
          Appellant’s challenge to the evidence concerning loss of normal use of mental
or physical faculties is a challenge to the jury’s interpretation of the evidence. A
nurse and a doctor at Ben Taub both testified that they suspected appellant of being
intoxicated on the night of the accident. The nurse testified that she thought it “was
definitely a possibility” that appellant was intoxicated, but that procedure is to treat
each patient as a worst-case scenario, which in this case was a head injury. The nurse
testified that the longer she observed appellant’s uncooperative behavior, which she
felt was “too rambunctious” for someone with a head injury, the more she suspected
appellant was intoxicated. The doctor testified that, before getting the results of
appellant’s CAT scan and blood-alcohol results, she believed appellant to be
intoxicated based on his demonstrated ability to comprehend and sporadically follow
commands, especially from people he knew, but refusal to speak or follow commands
at other times. The doctor also relied on the opinion of the nurse who worked one-on-one with appellant and opined that appellant was intoxicated. In addition, the
State introduced the results of appellant’s blood-alcohol test, revealing that appellant
had consumed alcohol on the night of the accident. Though the jury could have found
that appellant’s behavior at the hospital was caused by a head injury, the mere
existence of a reasonable alternative hypothesis does not render the evidence factually
insufficient. See Love v. State, 199 S.W.3d 447, 454 (Tex. App.—Houston [1st]
2006, pet. ref’d). Likewise, while the jury could have found that appellant’s last-second braking was the result of Gomez’s unexpected turn, the jury could reasonably
interpret that as a result of appellant’s impairment from alcohol, in light of the other
evidence of intoxication that was admitted at trial.
          We cannot conclude that the evidence is factually insufficient to show that
appellant had lost the normal use of his mental or physical faculties by reason fo the
introduction of alcohol into his body when he collided with Gomez’s truck. 
Appellant’s challenges to the factual sufficiency of the evidence are based on the
credibility of witnesses and the weight to give their testimony, issues on which we
must defer to the jury. See Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App.
2008). We conclude that, viewed in a neutral light, the evidence tending to prove that
appellant lacked normal use of his mental or physical faculties at the time of the
accident by reason of introduction of alcohol is not so weak as to render the jury’s
verdict clearly wrong or manifestly unjust. See Johnson, 23 S.W.3d at 11. We also
conclude that, viewed in a neutral light, the verdict is not against the great weight and
preponderance of the evidence. See id. 
          Because the evidence is factually sufficient to support the verdict based on one
definition of intoxication included in the charge, we need not reach the question of
whether the evidence was factually sufficient based on the 0.08 definition of
intoxication. We hold that the evidence is factually sufficient to sustain the jury’s
guilty verdict. See id. We overrule points of error four and six.
Motions to Suppress Evidence
          Appellant challenges the trial court’s rulings denying his motions to suppress
evidence. 
          A. Standard of Review
          We review a trial court’s ruling on a motion to suppress for abuse of discretion,
and we review the record of the hearing on the motion in the light most favorable to
the trial court’s ruling. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App.
2002); Flores v. State, 177 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2005, pet.
ref’d). Ruling on a motion to suppress lies within the sound discretion of the trial
court. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Flores, 177
S.W.3d at 13. 
          At the hearing on the motion, the trial court is the sole judge of the credibility
of the witnesses and decides the weight to give their testimony. Villarreal, 935
S.W.2d at 138; Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Flores,
177 S.W.3d at 14. We must sustain the trial court’s ruling if it is reasonably supported
by the record and is correct on any theory of law applicable to the case. Villarreal,
935 S.W.2d at 138; Flores, 177 S.W.3d at 14. 
          As here, when the trial court files findings of fact with its ruling on a motion to
suppress, an appellate court does not engage in its own factual review, but determines
only whether the record supports the trial court’s fact findings. Romero, 800 S.W.2d
at 543; Flores, 177 S.W.3d at 14. Unless the trial court abused its discretion by
making a finding not supported by the record, we will defer to the trial court’s fact
findings and not disturb the findings on appeal. Cantu v. State, 817 S.W.2d 74, 77
(Tex. Crim. App. 1991); Flores, 177 S.W.3d at 14. On appellate review, we address
only the question whether the trial court properly applied the law to the facts. Romero,
800 S.W.3d at 543; Flores, 177 S.W.3d at 14. 
          B. Medical Records
          In his first point of error, appellant contends that the trial court erred by denying
the motion to suppress because he had a reasonable expectation of privacy in his
medical records under HIPAA. Appellant wants everything that followed the nurse’s
leak to be suppressed as the fruit of the poisonous tree, claiming that, without the leak,
there would not have been any reason to believe he committed an offense, and there
would not have been any issuance of a subpoena. Appellant also asserts the grand jury
subpoena was not issued by the actual grand jury but was instead issued by a
prosecutor, which he claims violates article 24.01 of the Code of Criminal Procedure. 
See Tex. Code Crim. Proc. art. 24.01 (Vernon 1989).
                    1. Applicable Law
          Five years before Congress enacted HIPAA, the Texas Court of Criminal
Appeals held that a person has no reasonable expectation of privacy in blood-alcohol
test results taken by hospital personnel for purely medical purposes when those results
are obtained through a grand-jury subpoena. See State v. Hardy, 963 S.W.2d 516, 527
(Tex. Crim. App. 1997). HIPAA went into effect on April 14, 2003. See 45 C.F.R.
§ 164.534 (2006). Pursuant to HIPAA, the Department of Health and Human Services
promulgated regulations to protect against inappropriate use of patients’ medical
information. See 65 Fed. Reg. at 82,463–64. These regulations limit the situations in
which a healthcare provider can release a patient’s medical information without that
patient’s consent. See 45 C.F.R. § 164.502 (2006). 
          The Austin Court of Appeals recently held that HIPAA did not preempt Hardy. 
Murray v. State, 245 S.W.3d 37, 41–42 (Tex. App.—Austin 2007, pet. ref’d). Murray
held that, even after HIPAA, a person does not have a reasonable expectation of
privacy in blood-alcohol results obtained through a grand-jury subpoena. Id. As the
Austin court pointed out, “the issue before the court of criminal appeals in Hardy
. . . was not whether society generally recognize[s] a reasonable expectation of privacy
in medical records.” Id. at 41 (citing Hardy, 963 S.W.2d at 523–27). Hardy addressed
the narrow issue of “the expectation of privacy in blood-alcohol test results obtained
after an accident solely for medical purposes.” Id. (quoting Hardy, 963 S.W.2d at
527). The Austin court additionally noted that HIPAA does not overrule or preempt
Hardy because HIPAA itself carves out exceptions to the general protection of
medical records, “recognizing that a patient’s right to privacy in his medical records
must be balanced with the needs of society.” Id. (citing 65 Fed. Reg. at 82,464). 
          HIPAA includes a permissive exception to allow a healthcare provider to
disclose protected healthcare information:
A covered health care provider providing emergency health care in
response to a medical emergency . . . may disclose protected health care
information to a law enforcement official if such disclosure appears
necessary to alert law enforcement to: 
          (A)    The commission and nature of a crime; 
          (B)    The location of such crime or of the victim(s) of such
crime; and 
          (C)    The identity, description, and location of the perpetrator of
such crime.
45 C.F.R. § 164.512(f)(6)(i); see also Kennemur v. State, No. 07-07-00096-CR, 2008
WL 1991730, at *5–6 (Tex. App.—Amarillo May 8, 2008, pet. ref’d). Because
HIPAA allows disclosure when it is necessary to alert law enforcement to the
commission and nature of a crime, we agree with the Austin Court of Appeals that the
disclosure of a patient’s blood alcohol content under circumstances that suggest the
patient has committed the offense of DWI does not violate HIPAA. Murray, 245
S.W.3d at 41–42.
                    2. Analysis
          The circumstances here parallel those in Hardy and Murray. Hardy, 963
S.W.2d at 523–27; Murray, 245 S.W.3d at 41–42. As in Hardy and Murray, here the
medical records were obtained through a grand jury subpoena after hospital personnel
conducted a blood-alcohol test for purposes of medical treatment following the
patient’s involvement in motor vehicle accident. See Hardy, 963 S.W.2d at 523–27;
Murray, 245 S.W.3d at 41–42. Hospital personnel’s revealing of appellant’s blood-alcohol test results is permissible under HIPAA, which allows disclosure when it is
necessary to alert law enforcement to the commission and nature of a crime. See
Kennemur, 2008 WL 1991730, at *5–6; Murray, 245 S.W.3d at 41–42.
          Because appellant has no privacy interest in his blood-alcohol test results
obtained by police officers through a grand jury subpoena, appellant lacks standing
to contest the validity of the grand jury subpoena. See Murray, 245 S.W.3d at 42
(citing Ramos v. State, 124 S.W.3d 326, 339 (Tex. App.—Fort Worth 2003, pet. ref’d);
Tapp v. State, 108 S.W.3d 459, 461 (Tex. App.—Houston [14th Dist.] 2003, pet.
ref’d)); Garcia v. State, 95 S.W.3d 522, 526–27 (Tex. App.—Houston [1st Dist.]
2002, no pet.). We hold the trial court did not err by overruling the motion to suppress
appellant’s medical records. We therefore overrule appellant’s first point of error.
          C. Evidence Obtained from Black Box
          In his seventh point of error, appellant contends the trial court erred by denying
the motion to suppress the evidence obtained from the car’s black box. Appellant
asserts that investigators downloaded information from the black box in violation of
section 547.615 of the Texas Transportation Code. See Tex. Transp. Code Ann. §
547.615 (Vernon Supp. 2007). Appellant also asserts that the black box evidence was
seized in violation of his Fourth Amendment protection against unreasonable search
and seizure.Searches conducted without a warrant are unreasonable per se under the Fourth
Amendment, subject only to a few specifically established and well-delineated
exceptions. Welch v. State, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002). One recognized
exception is when a voluntary consent to search has been given. Id. “[W]hen the
prosecution seeks to justify a warrantless search by proof of voluntary consent, it is
not limited to proof that consent was given by the defendant, but may show that
permission to search was obtained from a third party who possessed common authority
over or other sufficient relationship to the premises or effects sought to be inspected.” 
U.S. v. Matlock, 415 U.S. 164, 171–72, 94 S. Ct. 988, 993 (1974). 
          The trial court made findings of fact concerning the motion to suppress the
evidence obtained from the black box, in pertinent part, as follows: 
1. The Court finds that Brian Kirsch was working an extra job for
Houston Police Department officer Paul Reece [sic] . . . on May 12th,
2006 to 4AM on May 13th, 2006 and that Kirsch was . . . to patrol . . .
in one of Reece's [sic] marked security cars during that time period.
 
2. The Court finds that Paul Reece [sic] and his wife are the exclusive
owners of the motor vehicle, namely a Chevrolet Malibu (the vehicle)
security vehicle, that was driven by Brian Kirsch on May 13, 2006 at or
about 3:10 AM and was involved in a crash in the 15100 block of the
North Freeway at Airtex . . . .
 
3. The Court finds that Paul Reece [sic] went to a private vehicle storage
facility where the vehicle was being stored with a police hold in place on
May 13, 2006 and while he was there, Reece [sic] saw that Deputies
Wilkie and Soots were attempting to download the module’s data from
the vehicle. . . . Reece [sic] stated to Wilkie and Soots that they could do
whatever they needed to the vehicle to complete their investigation. The
Court further finds that Wilkie and Soots were unable to download the
data from the module on that date and that the module was removed and
tendered to Harris County Sheriffs Deputy R.A. Swango. The Court finds
that on May 15th, 2006, Deputy Swango took the module to a private
crash reconstructionist named Joe Hinton who had the appropriate tools
for downloading the module’s data. . . .
 
In one of its conclusions of law, the court found that “Paul Reece [sic] had a sufficient
possessory interest in the vehicle and consented to the search when he stated to Deputy
Wilkie that he could do whatever he needed to get his investigation completed.”
          The evidence shows that the removal of the black box from Reese’s vehicle
constituted a valid search. Appellant first asserts that investigators violated the Texas
Transportation Code by removing the black box without the consent of either Reese
or appellant. However, the trial court found that Reese was an owner of the vehicle. 
Reese gave investigating officers broad consent to do whatever was necessary to his
vehicle to conduct their investigation. The Transportation Code includes an exception
allowing information on a black box to be retrieved by someone other than the owner
if the owner consents. See Tex. Transp. Code Ann. § 547.615. Therefore, the
investigators did not violate the Texas Transportation Code by removing the black box
with Reese’s consent.
          Appellant also asserts that he had a legitimate expectation of privacy in the
black-box data. As previously stated, Reese had an ownership interest in the car, and
Reese consented to the search. Since police may obtain consent from anyone with
authority over the property, see Matlock, 415 U.S. at 171–72, 94 S. Ct. at 993, Reese’s
consent to the car’s search rendered the search valid under the Fourth Amendment. 
See Welch, 93 S.W.3d at 52–53. We hold that police removal of the black box did not
violate appellant’s Fourth Amendment right against search and seizure. We overrule 
appellant’s seventh point of error.       
Jury Charge
          In his second point of error, appellant contends that it was improper to allow
conviction for intoxication based on a blood-alcohol concentration of 0.08 or more. 
Appellant explains that the blood-alcohol evidence was admitted with a limiting
instruction allowing the jury to consider the evidence only for the purpose of showing
that appellant consumed alcohol that night, so there was no evidence to show what
appellant’s blood-alcohol concentration was at the time he drove the vehicle. 
          A. Applicable Law
          A charge must distinctly set forth the law applicable to the case. See Tex. Code
Crim. Proc. Ann. art. 36.14 (Vernon 2007). If the jury charge is erroneous, we
determine whether appellant was harmed. Middleton v. State, 125 S.W.3d 450, 453
(Tex. Crim. App. 2003). We review the error to see if “some harm” resulted from the
erroneous instruction when the appellant, as here, has preserved the error by objecting
to the jury charge. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)
(op. reh’g). 
          Blood-alcohol test results are probative of both the per se and impairment
definitions of intoxication. See Mechler, 153 S.W.3d at 440; see also Stewart v. State,
129 S.W.3d 93, 98 (Tex. Crim. App. 2004) (holding same). In State v. Mechler, the
trial court suppressed intoxilizer result on the grounds that the probative value of the
test result was substantially outweighed by the danger of unfair prejudice due to the
State’s inability to present breath test extrapolation evidence. See Mechler, 153
S.W.3d at 437–38. In reversing the trial court, the Court of Criminal Appeals
explained that the results that showed Mechler’s blood-alcohol concentration was
0.165 an hour-and-a-half after he was seen driving were probative without
extrapolation because “they tend to make it more probable that he was intoxicated at
the time of driving under both the per se and impairment definitions of intoxication.” 
Id. at 440. In her concurring opinion in Mechler, Judge Cochran, joined by Judges
Meyers, Price, and Johnson, explained why intoxilizer results can be probative
evidence without extrapolation testimony by stating, 
The single most important factor in the context of admitting breath test
results in the absence of extrapolation testimony is the inherent
probative value of the test result. In turn, the relative probative value of
the test depends primarily upon two variables: 1) the degree to which the
test result exceeds the legal limit of 0.08%; and 2) the amount of time
elapsed between driving and the taking of the test. The higher the test
result and the shorter the time between driving and testing, the more
likely the logical inference is that the defendant had a BAC level at or
above 0.08% at the time of driving. The stronger the inference of a
BAC of 0.08% or greater at the time of driving, the less significant is the
necessity for expert retrograde extrapolation testimony. Conversely, the
weaker the inference of guilt, the more vital is the necessity for evidence
that relates an accused’s BAC test result back to the time of driving. 
When a test is obtained long after the arrest and the result is at or below
the legal limit, the logical inference that the person had a 0.08% BAC
at the time of driving may be so tenuous that a trial judge appropriately
exercises his discretion by excluding that specific test result under Rule
403 absent expert testimony that extrapolates the test result back to the
time of driving.
 
Id. at 449 (Cochran, J., concurring).
                    Before Mechler, the Court of Criminal Appeals similarly held in Stewart that
intoxilizer results were admissible without retrograde extrapolation evidence. See
Stewart, 129 S.W.3d at 96. Stewart had a blood-alcohol concentration of 0.154 when
tested 80 minutes after she was seen driving. Id. at 95. The Court held the test results
were relevant to show that her blood-alcohol concentration was 0.10 or more, which
was then the statutory per se amount. Id. at 96. The Court in Stewart rejected the
argument that retrograde extrapolation evidence was necessary to connect Stewart’s
blood test results to the per se definition of intoxication. The Court explained,
The admission of the breath test results did not necessarily
encourage the jury to engage in its own crude retrograde extrapolation
because the jury did not need to establish Stewart’s exact blood alcohol
concentration at the time that she drove. The jury only needed to believe
beyond a reasonable doubt that either her blood alcohol concentration
was 0.10 or more, or that she failed to have the normal use of her mental
or physical faculties by reason of introduction of alcohol into her body,
at the time she drove. The breath test results were properly admitted
evidence to consider with all of the other evidence of intoxication to
determine if Stewart was intoxicated at the time she drove.
 
          Id. at 97. Mechler and Stewart instruct that results that show blood-alcohol
concentration can be admissible evidence without retrograde extrapolation evidence,
for purposes of proving whether a defendant has lost the normal use of his mental or
physical faculties due to alcohol intoxication and whether the defendant has a blood
alcohol concentration of 0.08 or more. See Mechler, 153 S.W.3d at 437–38; Stewart,
129 S.W.3d at 97. 
                    B. Analysis
                    Although there is no retrograde extrapolation evidence, appellant’s blood test
results show he had a blood-alcohol concentration of 0.10 at the hospital 80 minutes
after he was involved in the accident and those results are probative of both the per se
and impairment definitions of intoxication. See Mechler, 153 S.W.3d at 440; Stewart,
129 S.W.3d at 97–98. The results, therefore, are some evidence from which the jury
could find appellant guilty under the per se impairment definition of intoxication. See
Mechler, 153 S.W.3d at 440; Stewart, 129 S.W.3d at 97–98. Appellant’s test result
was not “at or below the legal limit” at the time of the test, but rather was twenty
percent above the legal limit. See Mechler, 153 S.W.3d at 449 (Cochran, J.,
concurring). Moreover, the lapse of time between the driving and the test was 80
minutes, which is not long. See id. From these circumstances, the jury could logically
infer that appellant had a 0.08% blood alcohol content at the time of driving. See id.;
Mechler, 153 S.W.3d at 440; Stewart, 129 S.W.3d at 97–98. Thus, it would be proper
to instruct the jury that it could find appellant guilty under the per se impairment
definition of intoxication. Mechler, 153 S.W.3d at 440; Stewart, 129 S.W.3d at 
97–98. 
                    The only difference between the circumstances in Stewart and Mechler and
those here is that here the trial court admitted the test result with a limiting instruction
that narrowed the purpose of the evidence. See Mechler, 153 S.W.3d at 437–38;
Stewart, 129 S.W.3d at 96. When a trial court gives a limiting instruction, the jury
may only consider the evidence for the purpose for which it was admitted. See Tex.
R. Evid. 105(a). 
                    The trial court’s limiting instruction to the jury narrowed the jury’s
consideration of the evidence to show that appellant had consumed alcohol on the
night of the accident. The court stated:
          Members of the jury, I’m going to tell you now that that result is off—
will be received by the Court for the limited purpose of showing that the
individual who was tested had ingested alcohol only at some point
before the time of the test. That is the only purpose that will be offered
and the only purpose for which you should receive it at this time in this
trial.
 
To the extent that the instruction said the test could only show appellant ingested
alcohol, the instruction was erroneous, in light of the Court of Criminal Appeals
decisions that the test results are some evidence from which the jury could find
appellant guilty under the per se impairment definition of intoxication. See Mechler,
153 S.W.3d at 440; Stewart, 129 S.W.3d at 97–98. However, it is not entirely clear
that the limiting instruction precluded the jury from considering evidence that
appellant had 0.10 blood alcohol content 80 minutes after the accident. Although the
trial court told the jury it could only consider the test results to show appellant
“ingested alcohol only at some point before the time of the test,” it did not tell the jury
to not consider the 0.10 test result, nor did it tell the jury that it could not infer from
that evidence that appellant was 0.08 or more at the time of driving. 
                    The trial court apparently did not see anything inconsistent about the limiting
instruction and the written instructions, in that the court instructed the jury that both
instructions continued to apply throughout the trial.


 Taking the limiting instruction
in light of the accompanying written instructions, we conclude the jury could consider
the blood alcohol content to decide whether appellant’s blood alcohol content was
above the legal limit. We hold the trial court’s jury instruction allowing the jury to
convict under the per se definition was not erroneous because there was evidence
from which the jury could find appellant guilty under the per se impairment definition
of intoxication. See Mechler, 153 S.W.3d at 440; Stewart, 129 S.W.3d at 97–98. We
overrule appellant’s second point of error.Conclusion
          We affirm the judgment of the trial court.
 
                                                                        Elsa Alcala
                                                                        Justice
 
Panel consists of Justices Taft, Keyes, and Alcala.
 
          Publish. Tex. R. App. P. 47.2(b).