**Affirmed and Memorandum Opinion filed October 22, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00645-CR
### NO. 14-12-00646-CR

**RICHARD ANTHONY HEROD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause Nos. 10CR0325,10CR0326**

## M E M O R A N D U M    O P I N I O N

A jury convicted Richard Anthony Herod of aggravated robbery[1] in cause number 10CR0326 and aggravated sexual assault[2] in cause number 10CR0325. The jury assessed appellant's punishment at confinement for "99 years or life," and

---

[1] *See* Tex. Pen. Code Ann. § 29.03 (Vernon 2011).

[2] *See* Tex. Pen. Code Ann. § 22.021 (Vernon 2011).

the trial court's written judgment reflects appellant's sentence to be 99 years' confinement for both offenses to run concurrently. Appellant challenges his conviction and sentence. He contends that (1) the jury verdict of "99 years or life" for each offense violated Texas law and the trial court was without authority to reform his sentence to "99 years;" and (2) the trial court erred by denying his motion to suppress evidence. We affirm.

## Background

Appellant was indicted for aggravated robbery on March 24, 2010; he was indicted for aggravated sexual assault on April 9, 2010. A jury trial was held from June 4, 2012 to June 12, 2012. During the guilt-innocence phase of his trial, the following evidence was presented.

On January 7, 2010, two robbers with guns broke into the home of Alissia and Ronnie Gallagher. Ronnie recognized the first robber as "Ricky D" — the appellant. The man Ronnie identified as "Ricky D" blindfolded Ronnie, used a zip tie to restrain him, and took codeine and $500 in cash. "Ricky D" also sexually assaulted Alissia and asked for her cell phone number, which she gave him. Ronnie heard the sound of a diesel truck pulling away when the robbers left. Alissia went to the neighbor's house to call 9-1-1, and police arrived to investigate the scene.

On January 8, 2010, Alissia received two cell phone calls in quick succession; she recognized the voice as that of her assailant from the night before, the man Ronnie identified as appellant. Alissia called 9-1-1 immediately afterwards. Detective Robles of the Texas City Police Department, who was in charge of investigating the aggravated robbery and sexual assault, obtained arrest warrants for appellant in connection with both offenses. Detective Robles also requested Alissia's cell phone records from her service provider.

2

Police officers stopped and arrested appellant on January 28, 2010, while he was driving in his truck. The arresting officers started conducting an inventory of the truck on the grass embankment next to the highway where they had stopped appellant. One of the police officers present at the scene, Officer Johnson of the Texas City Police Department, noticed dark-colored clothing and what looked like a black beanie or ski mask in the truck and contacted his supervisor, Sergeant Pope of the Texas City Police Department. Johnson claimed he contacted Pope because the police reports from the aggravated robbery and sexual assault indicated that the robbers had their faces covered and were wearing dark-colored clothing. Pope told Johnson to stop the inventory so that he could determine if consent to search or a warrant was necessary. Officer Johnson then drove the truck to the Texas City Police Department, leaving everything in the truck where it was.

At the police department, appellant was taken to Detective Robles's office. Robles explained to appellant the investigation and the charges against him. Appellant was offered food, water, cigarettes, and a chance to use the restroom. Robles then asked whether appellant would consent to a search of his truck. After Robles read and explained the Consent to Search form, appellant signed it, granting Detectives Robles and Flores (also of the Texas City Police Department) permission to search the vehicle, "[i]ncluding the containers and contents located therein." Robles described appellant's demeanor at the time as "calm." Appellant also gave verbal permission to search the truck, and Robles explained to appellant that he could withdraw his consent at any time. Appellant was present in leg shackles with Robles and Flores as Robles conducted the search. Appellant did not withdraw his consent at any time.

During the search, Robles found several articles of clothing and two cell phones and tagged the clothing into evidence. Robles did not tag the two cell

3

phones because he was not sure the cell phones had evidentiary value. Robles and appellant returned to Robles's office immediately after the truck search was completed. Robles called his office phone with each of the cell phones he found in appellant's truck in order to get the cell phone numbers from his office phone's caller identification. Robles documented the two numbers. After Robles made the calls and documented the numbers, appellant requested that Robles return the cell phones to appellant. Robles handed the cell phones to appellant, who then disassembled them and swallowed the SIM cards.

Appellant filed two pretrial motions seeking to suppress: (1) "all evidence seized as a result of the arrest of defendant and the search of defendant's person, papers and effects within defendant's vehicle" because the search of appellant's vehicle was "effected without a valid search warrant in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article I Section 9 of the Texas Constitution;" and (2) "all evidence seized as a result of the Texas City Police Department and the Galveston County District Attorney[']s illegal seizure of cell phone records to include but not limited to positioning records obtained from cell towers that purportedly track this defendant[']s movements" because the "taking of the cell records without his consent from the cell provider is an illegal search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article I Section 9 of the Texas Constitution." The trial court denied appellant's motions to suppress.

The jury found appellant guilty of aggravated sexual assault and aggravated robbery. Appellant elected to have the jury assess his punishment. The jury charge for each offense included two enhancements, which the jury found to be "true." The court's charge also instructed the jury that if it found both

4

enhancements to be "true," the appropriate punishment range for each offense was confinement "for a period of not less than twenty-five (25) years nor more than ninety-nine (99) years or life." When the jury returned the sentences for both cause numbers, the court read the sentences aloud as "99 years or life," based on what the jury wrote in the blanks on the verdict forms. The trial judge later announced for the record in open court that the jury "assessed punishment in this case at 99 years confinement," and the written judgment for both offenses reflects a 99-year sentence.

Appellant filed a "Motion for New Trial and Motion in Arrest of Judgment," alleging that (1) appellant's Sixth and Eighth Amendment rights under the United States Constitution were "violated with evidence illegally gathered from taped jail phone calls between Appellate and his defense counsel;" (2) trial counsel failed to call an essential fact witness, resulting in a violation of appellant's Sixth Amendment right to effective assistance of counsel; (3) "[t]rial counsel from the [S]tate presented, and the trial court admitted as evidence, an incomplete DNA laboratory report resulting in a Brady violation as described in *Brady v. Maryland*, 373 U.S. 83;" and (4) "Police actions, regarding the confiscation of cell phones were in violation of Appellant's 4th amendment constitutional right regarding search and seizure." The trial court did not rule on the motion for a new trial, and it was overruled by operation of law. *See* Tex. R. App. P. 21.8. Appellant filed a timely appeal.

## Analysis

### I. Punishment

In his first issue, appellant contends that the jury's assessment of "99 years or life" as punishment for each offense creates an illegal and void punishment outside the maximum range of punishment, and requires reversal and remand for a

5

new sentencing hearing. Appellant asserts that he has an absolute right to be sentenced within the proper range of punishment, and the trial court did not have authority to correct the jury's error "by simply inserting an appropriate sentence in the judgment." According to appellant, the court cannot reform or change a verdict to conform to the proper statutory range unless it is with the jury's consent and before the jury is released.

Texas Code of Criminal Procedure section 37.07(2)(b) allows a defendant to elect to have the jury assess punishment. *See* Tex. Code Crim. Proc. Ann. art. 37.07(2)(b) (Vernon 2011). Before the trial began, appellant elected to have the jury assess punishment.

The jury charge for both cause numbers included the following instructions regarding the two enhancements and the allowable punishment range: "[I]f you find that both of these allegations are 'True,' you are to assess punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of not less than twenty-five (25) years nor more than ninety-nine (99) years or life, and so state in your verdict."[3] The jury found the enhancements to be "true." Each verdict form read:

> We, the Jury, find that the allegations in **both** Enhancement paragraphs of this indictment are **TRUE**, and assess the Defendant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for _____ years.

---

[3] Texas Penal Code section 12.42(d) states:

> . . . if it is shown on the trial of a felony offense . . . that the defendant has previously been finally convicted of two felony offenses, . . . on conviction the defendant shall be punished by imprisonment . . . for life, or for any term of not more than 99 years or less than 25 years.

Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2012).

_____

FOREPERSON OF THE JURY

The jury assessed punishment by writing "99 or life" in the blank for cause number 10CR0325, and "99 years or life" in the blank for cause number 10CR0326. The jury foreperson signed both forms. When the jury returned the sentence for both cause numbers, the court read both sentences aloud in open court, including the "99 years or life" language. Defense counsel requested that the court poll the jury. The court asked each juror, "[A]re the verdicts that I have read here in open court on punishment, are those verdicts your verdicts?" All jurors responded affirmatively, and the court announced: "The court confirming these are the unanimous verdicts of the jury in these two cases, the court accepts these verdicts and orders them filed of record."

After dismissing the jury, the trial court announced: "[M]ay the record reflect . . . the jury having found the enhancement provisions of the indictments to be true and having assessed punishment, assessed punishment in this case at 99 years' confinement in the penitentiary." The written judgment for both offenses read: "Punishment and Place of Confinement: NINETY-NINE (99) YEARS INSTITUTIONAL DIVISION, TDCJ."

Although neither party objected to the trial court's assessment of punishment, appellant's argument regarding the legality of his sentence properly is before this court. "Unlike most trial errors which are forfeited if not timely asserted, a party is not required to make a contemporaneous objection to the imposition of an illegal sentence." *Tufele v. State*, 130 S.W.3d 267, 274 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (quoting *Mizell v. State*, 119 S.W.3d 804, 806 n.6 (Tex. Crim. App. 2003)). In addition, an illegal sentence has "no legal effect" and any court with jurisdiction may notice and take action upon a void

7

or illegal sentence at any time. *Baker v. State*, 278 S.W.3d 923, 926-27 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Mizell*, 119 S.W.3d at 805-07). An appellant is not barred from complaining of a void sentence on direct appeal even if the issue was not first raised before the trial court. *Heath v. State*, 817 S.W.2d 335, 336 (Tex. Crim. App. 1991), *overruled on other grounds by Ex parte Williams*, 65 S.W.3d 656 (Tex. Crim. App. 2001).

A sentence that is outside the maximum or minimum punishment range is unauthorized by law and thus void and illegal. *See Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003); *Baker*, 278 S.W.3d at 926. Here, the jury found appellant guilty of both offenses, and further found that appellant had been convicted of two prior felonies. The statutory punishment for a defendant who has previously been finally convicted of two felony offenses is imprisonment for life, or for any term of not more than 99 years or less than 25 years. *See* Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2012).

Appellant relies on *Baker* for the proposition that a trial court may not revise a jury verdict when the punishment assessed by the jury is illegal. In *Baker*, the jury was instructed to assess a punishment of "between 180 days and two years in a state jail facility plus a fine of up to $10,000." *Baker*, 278 S.W.3d at 925. The jury assessed five years and a $10,000 fine as punishment. *Id*. The term of imprisonment was more than the maximum allowed by statute for the relevant offense. *Id*. The court held that a sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal. *Id*. (quoting *Mizell*, 119 S.W.3d at 806).

Here, the jury returned a verdict for each offense assessing the defendant's punishment at "confinement . . . for 99 or life years." Both punishments are authorized by the relevant statute; neither is an unauthorized punishment outside

8

the statutory punishment range.  *See* Tex. Pen. Code Ann. § 12.42(d).  Therefore, the assessed punishment is not an illegal sentence.

To the extent appellant attempts to argue that the jury returned an informal verdict which the trial court lacked authority to "change" without the jury's consent in violation of Texas Code of Criminal Procedure section 37.10(a), we will address this argument next.

We assume without deciding that the jury returned an informal verdict in this case.  An informal verdict is "one that does not meet the legal requirements of being written or answered as authorized."  *Jennings v. State*, 302 S.W.3d 306, 309 (Tex. Crim. App. 2010); *see* Tex. Code Crim. Proc. Ann. art. 37.10(a) (Vernon 2006).

In addressing appellant's argument and determining whether the trial court reversibly erred by "changing" the jury's informal verdict, we look to our decision in *Perez v. State*, 21 S.W.3d 628 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In *Perez*, the jury foreman signed three alternative punishment verdicts: one for life imprisonment, one for life imprisonment with no fine, and one for 30 years' confinement.  *Perez*, 21 S.W.3d at 630.  The trial court read the verdict for 30 years' confinement in open court, and asked the jury if that was its verdict.  *Id.* The jury responded "yes" in unison and then was excused.  *Id.*  The trial court signed a judgment reflecting punishment for 30 years' confinement.  *Id.* at 631. This court held that, although the trial court should have sent the verdict back to the jury to be corrected, the trial court did not commit error because a liberal interpretation of the jury verdict establishes that the jury intended a sentence of 30 years' imprisonment without a fine.[4]  *Id.*  This court also concluded that any trial

---

[4] The *Perez* court noted that the "general rule is that a jury's verdict should be held good if the jury's intention can reasonably be ascertained.  A verdict should receive a liberal rather than a strict construction and, when a finding of the jury can be reasonably ascertained, the verdict is sufficient." *Perez*, 21 S.W.3d at 631.  The court also stated: "In the instant case, we find that a reasonable and liberal

9

court error in receiving the conflicting verdict and signing a judgment to reflect a 30 year sentence would have been harmless. *Id*. at 630-31.

Following *Perez*, we note it is the duty of the trial judge to reject unresponsive, incomplete or insufficient verdicts, call the problem to the attention of the jury and have the problem corrected with the jury's consent or reconsideration. *Id*. at 631. When a jury returns an informal verdict, the court shall call the jury's attention to the informal verdict, and with the jury's consent, reduce the verdict to the proper form. *Id*.; *see* Tex. Code Crim. Proc. Code Ann. § 37.10(a); *Reese v. State*, 773 S.W.2d 314, 317 (Tex. Crim. App. 1989). "As this was not done in this case, nor did appellant object or otherwise bring the problem to the court's attention," we must determine whether this trial court error was harmful. *See Perez*, 21 S.W.3d at 631 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

When a trial court commits reversible error, an appellate court must determine if the error is constitutional in nature or affects a substantial right. Tex. R. App. P. 44.2. A defendant does not have a constitutional right to have punishment assessed by the jury; that right is granted to a defendant by statute. *See* Tex. Code Crim. Proc. Ann. § 37.07(2)(b); *Ivey v. State*, 277 S.W.3d 43, 46-47 (Tex. Crim. App. 2009) (citing *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006)). Further, this court stated in *Perez* that this error is not constitutional in nature. *Perez*, 21 S.W.3d at 631. Therefore, we proceed to determine if the error was harmless and must be disregarded under Rule 44.2(b). *See* Tex. R. App. P. 44.2(b).

---

interpretation of the jury's verdict forms leads us to conclude that the jury intended a thirty year sentence without a fine. This was the sentence that was read in open court and agreed to by the jury, and the sentence that was reflected in the court's judgment." *Id*. Here, the jury did not confirm or agree that appellant's sentence should be for 99 years imprisonment as reflected in the trial court's judgment.

In *Tollett v. State*, 799 S.W.2d 256, 259 (Tex. Crim. App. 1990), the Court of Criminal Appeals noted the court of appeals' characterization that a 99-year sentence and a sentence of life in prison are "equivalent sentences" as "a practical matter." *Tollett*, 799 S.W.2d at 259 (quoting *Tollett v. State*, 727 S.W.2d 714, 18 (Tex. App.—Austin 1987), *reversed by* 761 S.W.2d 376 (Tex. Crim. App. 1988)). The Court of Criminal Appeals also noted the court of appeals' finding that "'[t]o the extent that these terms of imprisonment differ, ninety-nine years . . . is the lesser.'" *Id*. (quoting *Tollett*, 727 S.W.2d at 718). The Court of Criminal Appeals stated: "We agree with the Court of Appeals' analysis of the relative severity of the two sentences." *Id*.

In this case, the sentences were likewise equivalent as a practical matter; if they were not equivalent, then the trial court's judgment assessed a lesser sentence. *Tollett*, 799 S.W.2d at 259 n. 3 ("Theoretically, a ninety-nine year sentence may be discharged during a prisoner's lifetime, but a life sentence will continue as long as he lives. Thus a felon serving a life sentence will always be on parole, while a felon with a ninety-nine year term could theoretically outlive his sentence."). We hold that any error in failing to comply with the procedure set out in section 37.10(a) was not harmful to appellant.

Accordingly, we overrule appellant's first issue.

## II.     Motion to Suppress

In his second issue, appellant argues that the trial court abused its discretion when it refused to suppress "information pulled from Appellant's cell phones without a warrant" in violation of the Fourth Amendment of the United States Constitution, and of Article I, Section 9 of the Texas Constitution.

11

We review a trial court's ruling on a motion to suppress by applying a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a *de novo* standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011) (citing *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997)). When a trial court makes written findings of fact, as it did in this case, we must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record. *Baird v. State*, 398 S.W.3d 220, 226 (Tex. Crim. App. 2013). We then proceed to a de novo determination of the legal significance of the facts as found by the trial court. *Id.* We will sustain the trial court's ruling if that ruling is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra v. State*, 310 S.W.3d 442, 448-49 (Tex. Crim. App. 2010).

The Fourth Amendment guarantees individuals "the right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Gutierrez v. State*, 221 S.W.3d 680, 684-85 (Tex. Crim. App. 2007); *see* U.S. Const. amend. IV. The Texas Constitution similarly provides: "The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches . . . ." Tex. Const. art. I, § 9. "[A] warrantless search of either person or property is considered per se unreasonable." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). There are certain recognized exceptions to the warrant requirement, and it is the State's burden to prove that the search falls within one of these exceptions. *McGee*, 105 S.W.3d at 615. Consent to search is

12

one of the well-established exceptions to the constitutional warrant requirement. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000); *see Welch v. State*, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002). The test for a valid consent to search is that the consent be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *Carmouche*, 10 S.W.3d at 331.

Appellant argues that "[n]o authority allows the State to search property merely because its officers have probable cause to believe a crime occurred and evidence of that crime can be found on the property to be searched." Appellant complains that evidence of the two cell phone numbers Robles obtained by calling his office phone after he had removed the two cell phones from appellant's truck should have been suppressed. Appellant does not address his verbal or written consent to search his vehicle.

Appellant gave verbal permission to search his truck, saying "you can search my truck," and Robles explained to appellant that he could withdraw his consent at any time. Appellant also signed a Consent to Search form after Robles read and explained it to him. The consent form stated: "I, Richard Herod, hereby grant my consent to Det. Robles and Det. Flores, officers of the Texas City P.D. to search the following: vehicle . . . Including the containers and contents located therein." Immediately above appellant's signature line, the form stated: "I understand that I have the right to consent to the search described above and to refuse to sign this form. I further state that no promises, threats, or physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the above described search or to sign this form."

Appellant was present as Robles and Flores searched his truck; appellant was present when Robles removed two cell phones from his truck and brought them to his office. Appellant was also present in Robles's office when Robles used

13

the cell phones to call his desk phone. Appellant did not withdraw his consent at any time. After Robles called his desk phone, appellant asked Robles to return the cell phones to appellant and Robles returned the phones.

Further, the trial court made findings of fact concerning appellant's motion to suppress evidence obtained from the two cell phones that were removed from appellant's vehicle, in pertinent part, as follows:

> 12. After explaining to the Defendant that he had the right to refuse to allow the Texas City police to search his vehicle, the Defendant provided written consent to search his vehicle. The Court finds the Defendant consented knowingly and voluntarily.

> 13. The Defendant provided written consent to allow Texas City Police to search his vehicle with the understanding that the consent could be withdrawn at any time. The Defendant was taken to the vehicle during the search so that he could be present to withdraw that consent at any time. At no time did the Defendant withdraw his consent to Texas City Police Department's search of his vehicle.

In one of its conclusions of law, the trial court stated: "3. The Defendant provided lawful, voluntary written consent to Texas City Police Detective Ernest Robles to search his vehicle and its contents. At no time did the Defendant withdraw that voluntary consent."

The record shows that the removal of the two cell phones from appellant's vehicle and the call from the two cell phones to Robles's office phone to obtain the cell phone numbers constituted a valid search. *See Kirsch v. State*, 276 S.W.3d 579, 588 (Tex. App.—Houston [1st Dist.] 2008), *aff'd*, 306 S.W.3d 738 (Tex. Crim. App. 2010) (holding that trial court properly denied a motion to suppress evidence that had been retrieved from a car's black box when the car owner told police they could do whatever they needed to the vehicle to complete their investigation and police officers removed the black box from the car because they were unable to download the data from the black box and took the black box to a

14

private crash reconstructionist who had appropriate tools to download the data from the black box).

Appellant does not challenge the validity of his oral and written consent to search his vehicle and the contents therein on any grounds. Nor does appellant challenge the scope of his consent, or argue that his consent to search his vehicle and its contents did not include the two cell phones in his vehicle. Appellant does not assert that the two phones were not part of the contents of the vehicle and thus were not encompassed by his consent to search. Appellant does not contend that he ever withdrew or limited his consent after signing the consent form. Appellant's consent to the search of his truck rendered the search valid under the Fourth Amendment. *See Kirsch*, 276 S.W.3d at 588-89 (citing *Welch v. State*, 93 S.W.3d 50, 52-53 ((Tex. Crim. App. 2002)).

We hold that Robles's removal of the cell phones and his call from the two cell phones to his office phone did not violate appellant's federal and state constitutional right not to be subjected to unreasonable search and seizure. *See id*. Accordingly, we overrule appellant's second issue.

### Conclusion

We affirm the trial court's judgment.

/s/    William J. Boyce
          Justice

Panel consists of Justices Boyce, Jamison and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).

15