**AFFIRM as Modified; and Opinion Filed April 23, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01186-CR

**LAURA SANDERS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. MB10-52665**

## OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice Brown

Laura Sanders appeals her conviction for the offense of driving while intoxicated. A jury found appellant guilty, and the trial court assessed her punishment at 180 days' confinement, probated for twenty-four months, and a $750 fine. As a condition of probation, the trial court originally ordered appellant to pay restitution in the amount of $7,000 to a woman whose car appellant hit while driving intoxicated. In six points of error, appellant contends the trial court erred in allowing expert witnesses and certain evidence when the State did not comply with the court's discovery orders, in admitting appellant's medical records into evidence, and in ordering restitution. In an opinion issued February 4, 2014, we agreed with appellant that the original restitution amount did not have a factual basis within the loss of the victim. We abated the appeal and remanded the case for a new restitution hearing. The trial court held a hearing and

issued a new restitution order in the amount of $7,075.28. We reinstated the appeal on March 20, 2014 and now consider appellant's remaining points of error. We modify the trial court's judgment to 1) reflect that appellant is ordered to pay restitution of $7,075.28 and 2) accurately reflect the fine orally assessed. As modified, we affirm the judgment.

## BACKGROUND

On the night of February 8, 2010, Samantha Lewis was driving on the Dallas North Tollway and observed appellant driving erratically. Appellant continuously swerved across all lanes of the tollway for a period of ten to fifteen minutes and almost hit another car. Lewis called 911 to report appellant and exited the tollway. As Lewis was slowing down to stop for a red light, she looked in her rear view mirror and saw appellant "barreling down the exit." Appellant's car struck Lewis's car twice and flipped over. Lewis got out of her car and looked for appellant. Lewis could smell alcohol coming out of appellant's car. Paramedics arrived and removed appellant from her car and took her to Parkland Hospital.

The Dallas Police Department accident investigator called to the scene dispatched Officer Bobby Watkins with the DWI squad to Parkland to investigate appellant for possible DWI. Watkins observed that appellant had bloodshot eyes, her breath had a strong smell of alcoholic beverage, and her speech was slurred. Watkins performed the horizontal gaze nystagmus test on appellant. Appellant's performance on the test indicated to Watkins that appellant did not have normal use of her mental and physical faculties due to alcohol. When Watkins asked appellant to take a blood test, appellant refused. Watkins arrested appellant for DWI and told her to turn herself in to the police when she was released from the hospital, which she did.

While appellant was hospitalized, a nurse drew her blood and it was tested for blood-alcohol level, among other things. Shannon Jeter, a nurse manager at Parkland, testified that she was very familiar with the hospital's standard procedures. She described the procedures for

taking a patient's blood, sending it to the lab for tests, and getting back the lab results. Jeter saw appellant before she was discharged from the hospital, but was not the nurse who took appellant's blood. Angeline Coyoca, a medical technologist at Parkland, testified that she was the person who verified and released the results of appellant's blood-alcohol test. The value of the ethanol in appellant's blood was 370. Then Aria McCall, a forensic toxicologist at Southwestern Institute of Forensic Sciences, testified that she had experience reading blood results from medical records. If whole blood was tested, a 370 ethanol value translates to .37 grams of alcohol per 100 milliliters. If plasma was tested instead of whole blood, a 370 ethanol value translates to .31 grams of alcohol per 100 milliliters. McCall stated she would find it highly unlikely that one could safely operate a motor vehicle one hour prior to having a blood-alcohol content of .37.

At the conclusion of the evidence, the jury found appellant guilty. At the punishment phase, Lewis and appellant testified. The trial court then assessed appellant's punishment at 180 days' confinement, probated for twenty-four months, and a $750 fine. The court ordered appellant to pay Lewis $7,000 restitution as a condition of probation. This appeal followed.

### DISCOVERY ISSUES

In her first and second points of error, appellant contends the trial court erred in allowing the State's expert witnesses to testify when they were not disclosed prior to trial and also in allowing evidence of the blood-alcohol test performed during appellant's hospital stay because documents the defense needed to prepare for trial were not produced. Appellant contends the trial court allowed such evidence in violation of article 39.14 of the code of criminal procedure and also that she was denied a fair trial as a result. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (b) (West Supp. 2013).

–3–

Several months prior to trial, in October 2011, appellant filed a motion asking the trial court to order the State to disclose its expert witnesses at least twenty days before trial and also to disclose copies of any reports, documents, or notes the experts had prepared for their testimony. Appellant also filed a "Motion for Discovery and Inspection of Records Related to the Blood Testing in this Case." Appellant specifically asked the trial court to order, within ten days, the State's attorney and agents to provide various information regarding the laboratory's policies and protocols for testing blood samples. The trial court granted both motions.[1]

At trial in April 2012, after voir dire and outside the presence of the jury, defense counsel asked the court to exclude all expert testimony, including that related to accident reconstruction, sobriety tests, blood test results, and medical records. Counsel stated that he had received no notice of any experts. He also complained that he received nothing regarding his motion to discover any blood test results or procedures. Defense counsel had only received the medical records that day. The problem seemed to have arisen because the prosecutor who took the case to trial was not the prosecutor assigned to the case when the discovery orders were signed. The court recessed the proceedings to allow the current prosecutor to talk to the previous prosecutor. There was no ruling at this time, and the trial proceeded after approximately forty-five minutes.

After Officer Watkins completed his testimony, another hearing was held outside the presence of the jury. The State produced for the first time a notice of its expert witnesses. Defense counsel reasserted his claim that the State had violated the court's order requiring the State to give twenty days' notice of its experts in accordance with article 39.14(b) of the code of criminal procedure. The parties also discussed appellant's medical records which were filed-

---

[1] We note that the trial court's order regarding the blood testing was directed to the Southwest Institute of Forensic Science, which was not involved in the testing in this case, and ordered SWIFS to produce various items to appellant. However, the court also ordered that "any evidence within the scope of the items granted above be provided by the State to defendant's attorney . . . on the tenth day after the date of this order." In its brief, citing its open-file policy, the State contends it was appellant's responsibility to gather evidence to use in her defense. The State therefore asserts the trial court exceeded its power in issuing this order. Because we dispose of these points of error on grounds of waiver, we do not address this argument.

–4–

stamped by the county clerk on March 15, 2012, less than a month before trial. Defense counsel did not have notice of the medical blood test before this time. Counsel had thought that this case was a "regular Texas DPS blood draw."

The trial court stated it did not think there was any bad faith on the part of the State. The court indicated it would have entertained a motion for continuance from appellant on these issues. To give defense counsel an adequate chance to prepare, the trial court stated it would give counsel the option to take a mid-trial continuance and resume the proceedings in a week. Defense counsel conferred with appellant off the record, and then the trial resumed, with the State presenting its remaining three witnesses - Jeter, Coyoca, and McCall.

Appellant alleges that violations of the court's discovery orders resulted in her attorney not being able to adequately prepare a meaningful defense. The proper procedure when alleging surprise due to violation of the trial court's orders for discovery is to request a continuance. *Duff-Smith v. State*, 685 S.W.2d 26, 33 (Tex. Crim. App. 1985); *Tamez v. State*, 205 S.W.3d 32, 40 (Tex. App.—Tyler 2006, no pet.). If a witness's name is not furnished to a defendant before trial despite a court order, any error in allowing that witness to testify over a claim of lack of notice is waived by the failure to move for a continuance. *Barnes v. State,* 876 S.W.2d 316, 328 (Tex. Crim. App. 1994); *see Lindley v. State,* 635 S.W.2d 541, 544 (Tex. Crim. App. 1982) (failure to seek continuance waives error urged on basis of surprise). Here, not only did appellant fail to request a continuance, she turned down the trial court's sua sponte offer for a week-long continuance to prepare further for trial. In appellant's brief, counsel asserts that he elected to move forward with the trial because a seven-day continuance would not have afforded him adequate time to prepare and to obtain the blood protocols. This is pure speculation, and nothing would have prevented counsel from seeking another continuance if one week did not

prove to be adequate.  Under these circumstances, we conclude appellant has waived any error in the trial court's actions.  We overrule appellant's first and second issues.

**ADMISSION OF MEDICAL RECORDS**

In her third, fourth, and fifth points of error, appellant contends the trial court erred in admitting into evidence her 112-page medical records from her stay in Parkland after the accident.  The State obtained these records before trial through a court-issued subpoena duces tecum directed to the custodian of records at Parkland.  In its order for release of the records, the court found that good cause had been shown for issuance of the subpoena to further the prosecution of a criminal matter pending before the court.

Appellant contends in point three that the medical records were admitted in violation of the confrontation clause.  Specifically she contends the records contain testimonial statements by witnesses who were not called to testify and were not subject to cross-examination.  When the medical records were offered into evidence, appellant objected on this basis, but her objection was overruled.

The Confrontation Clause of the Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against her. *Langham v. State*, 305 S.W.3d 568, 575 (Tex. Crim. App. 2010).  In *Crawford v. Washington*, the supreme court held that out-of-court statements offered against the accused that are testimonial in nature are objectionable unless the prosecution can show that the out-of-court declarant is unavailable to testify in court and the accused had a prior opportunity to cross examine him. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004); *see Langham*, 305 S.W.3d at 575.  The primary focus in determining whether a hearsay statement is testimonial is on the objective purpose of the interview or interrogation, not upon the declarant's expectations. *De La Paz v. State*, 273 S.W. 3d 671, 680 (Tex. Crim. App. 2008).  A hearsay statement is testimonial

–6–

when the surrounding circumstances objectively indicate the primary purpose of the interview is to establish or prove past events potentially relevant to later criminal prosecution. *Id.* Medical records, created for treatment purposes, are not testimonial within the meaning of *Crawford*. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009). Whether an out-of-court statement is non-testimonial is a question of law we review de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

Upon questioning by appellant, Nurse Jeter testified that she was aware the blood tests they perform at the hospital are sometimes used in criminal cases. Appellant contends this testimony shows that the medical records were testimonial in nature. We disagree. Despite the nurse's awareness that medical records are sometimes used in criminal cases, the objective purpose of gathering information from and about appellant at the hospital was to treat her injuries resulting from the car accident. Because the medical records were created for the primary purpose of treating appellant's injuries, we conclude they are non-testimonial in nature, and the trial court did not violate appellant's right to confront witnesses in admitting them.

The essence of appellant's confrontation clause complaint is that the State needed to call as witnesses the nurse who actually took appellant's blood and the technician who tested the blood so they could be subject to cross-examination. Appellant cites *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011) in support of this argument. In that DWI case, after the defendant rear-ended another vehicle and failed field sobriety tests, the police obtained a warrant authorizing a blood test. *Id.* at 2710. At trial, the forensic lab report containing the results of this test was the principal evidence against the defendant. The prosecution did not call the analyst who signed and certified the report. Instead they called another analyst who was familiar with the lab's testing procedures, but had not participated in or observed the testing. *Id.* at 2709. The supreme court held that the report contained a testimonial certification, and the defendant had a right to be

confronted with the analyst who made the certification. *Id.* at 2710. Appellant ignores the fact that, unlike *Bullcoming,* the blood testing in this case was done in the hospital for purposes of medical treatment and therefore was not testimonial in nature. *See Melendez-Diaz*, 557 U.S. at 312 n.2; *see also Bullcoming*, 131 S. Ct. at 2720 (when primary purpose of statement is not to create record for trial, admissibility of statement is concern of rules of evidence, not confrontation clause) (Sotomayor, J., concurring). We overrule appellant's third point of error.

In her fourth point of error, appellant contends the trial court erred in admitting the medical records because they contained hearsay within hearsay. When the State offered the medical records into evidence at trial, appellant objected on the basis of hearsay within hearsay, but did not point out any specific instances of it. The court overruled appellant's objections to the medical records and admitted them into evidence. In her brief, the only specific example of hearsay within hearsay appellant mentions is her statement, in response to questions about her social history, that she drinks alcohol twice a week, "but when I drink, I can drink."[2] Appellant contends this statement "and others like it" should not have been allowed.

To preserve error on the admission of evidence at trial, a party must make a timely and sufficiently specific objection and obtain a ruling. TEX. R. APP. P. 33.1(a). Appellant needed to specify what portions of the 112-page medical records were hearsay within hearsay. *See Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995) (when exhibit contains admissible and inadmissible evidence, objection must specifically refer to challenged material). Because appellant did not inform the trial court what statements in the medical records were allegedly hearsay within hearsay, she has not preserved this point of error for our review. Further,

---

[2] Although appellant states in her brief that the medical records also contain "statements as to how Ms. Sanders was found and the assumptions those that found her made," she has neither specified what those statements were nor provided any citations to the record to show the Court where in the 112-page medical records those statements can be found. *See* TEX. R. APP. P. 38.1(i) (appellant's brief must contain clear argument for contentions made, with appropriate citations to record).

–8–

appellant's statement about her history of alcohol consumption was admissible under an exception to the hearsay rule for statements made for purposes of medical diagnoses or treatment and describing medical history. *See* TEX. R. EVID. 803(4). To the extent appellant complains of other instances of hearsay within hearsay, not only were they not pointed out to the trial court, they have not been pointed out to this Court in appellant's brief. We overrule appellant's fourth point of error.

In her fifth point of error, appellant contends the trial court erred in admitting her medical records because they were obtained in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), which limits the situations in which a healthcare provider can release a patient's medical information without the patient's consent. 45 C.F.R. § 164.502 (2013). Appellant contends she had a reasonable expectation of privacy in her medical records, even blood-alcohol test results.

Appellant has waived this point of error. During the discussion of the State's violation of the court's discovery orders, appellant mentioned HIPAA and asserted that there should have been a hearing about whether the subpoena for the medical records violated HIPAA because appellant did not give permission to release them. The trial court indicated it did not think HIPAA applied, but said appellant could have a hearing. Appellant then went on to consider whether to take the week-long continuance offered by the court. When the State later moved to admit the medical records into evidence, appellant raised several objections, none of which involved HIPAA. As a prerequisite to presenting a complaint for appellate review, a party must make a timely and specific objection at trial, and there must be an adverse ruling by the trial court. TEX. R. APP. P. 33.1(a). Appellant did not ask the court to exclude the medical records on the basis of HIPAA; she instead asked for a hearing on whether HIPAA was violated. The trial

court indicated she could have a hearing, but HIPAA was not brought up again at trial. Under these circumstances, appellant has not preserved error.

Even if we consider the merits of appellant's HIPAA argument, there was no error. Prior to the enactment of HIPAA, in *State v. Hardy,* the Texas Court of Criminal Appeals held that a person has no reasonable expectation of privacy in blood-alcohol test results taken by hospital personnel for purely medical purposes after a traffic accident. *State v. Hardy*, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997). Courts have held that HIPAA does not preempt *Hardy*. *Kirsch v. State*, 276 S.W.3d 579, 586-87 (Tex. App.—Houston [1st Dist.] 2008), *aff'd on other grounds*, 306 S.W.3d 738 (Tex. Crim. App. 2010); *Kennemur v. State*, 280 S.W.3d 305, 312 (Tex. App.—Amarillo 2008, pet. ref'd); *Murray v. State*, 245 S.W.3d 37, 42 (Tex. App.—Austin 2007, pet. ref'd). Appellant acknowledges this state of the law, yet asserts that a 2009 amendment to HIPAA requires a change in the law.

Appellant relies on language in that section of HIPAA making wrongful disclosure of individually identifiable health information an offense. Specifically, she points to the following clarifying language: "[A] person (including an employee or other individual) shall be considered to have obtained or disclosed individually identifiable health information in violation of this part if the information is maintained by a covered entity . . . and the individual obtained or disclosed such information without authorization." 42 U.S.C. § 1320d-6(a) (2014). Appellant argues that because this language makes it possible for law enforcement personnel or district attorneys to violate HIPAA, a defendant has a reasonable expectation of privacy in her blood-alcohol test results. We are not persuaded that the amendment appellant relies on changes the fact that there is no reasonable expectation of privacy in blood-alcohol test results obtained for medical purposes following an accident. Because appellant had no reasonable expectation of privacy, she has no standing to complain of a HIPAA violation.

Further, appellant's medical records were properly disclosed under HIPAA pursuant to court order. Under section 164.512, a covered entity may disclose protected health information without authorization in certain situations. 45 C.F.R. § 164.512. HIPAA allows disclosure of protected health information for law enforcement purposes to a law enforcement official, if disclosure is in compliance with a "court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer." *Id.* § 164.512(f)(1)(ii). It also permits disclosure for judicial proceedings in response to an order of a court. *Id.* § 164.512(e)(1)(i). We overrule appellant's fifth point of error.

## RESTITUTION

In her sixth point of error, appellant contends the trial court erred in ordering that she pay restitution to Samantha Lewis as a condition of probation. She raises three complaints about the restitution order: 1) the amount of restitution does not have a factual basis within the record; 2) Lewis was not a victim of the DWI; and 3) the restitution was for an offense for which appellant was not criminally responsible.

In addition to any fine authorized by law, the court that sentences a defendant convicted of an offense may order the defendant to make restitution to any victim of the offense. TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (West Supp. 2013); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.12 sec. 11(b) (West Supp. 2013). Restitution may include reimbursement for any loss or destruction of property of a victim of the offense and expenses incurred by a victim due to personal injury resulting from the offense. TEX. CODE CRIM. PROC. ANN. arts. 42.037(b)(1), 42.037(b)(2) (West Supp. 2013). The court of criminal appeals recognizes three limits on the authority of a trial court to order restitution, all of which appellant raises here. *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd). The amount of restitution must be just, and it must have a factual basis within the loss of the victim. *Campbell v. State,* 5 S.W.3d

693, 696 (Tex. Crim. App. 1999). Further, a trial court may not order restitution for an offense for which the defendant is not criminally responsible. *Id.* at 697. Third, a trial court may not order restitution to anyone but the victim of the offense with which the offender is charged. *Id.* We review challenges to restitution orders under an abuse of discretion standard. *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980).

We have already addressed appellant's first contention that the amount of restitution ordered is unjust and not supported by the record. In an earlier opinion in this case, we agreed that the original $7,000 restitution order was not supported by the evidence. *Sanders v. State*, No. 05-12-01186-CR, 2014 WL 465432, *2 (Tex. App.—Dallas Feb. 4, 2014, no pet.) (not designated for publication). We abated the appeal and remanded to the trial court for a new restitution hearing. At that hearing, Samantha Lewis produced evidence that the fair market value of her 1999 Jeep Grand Cherokee, which was totaled as a result of the accident, was $6,500. She paid $409.15 to get her car out of the pound after the accident and later sold the car to a junkyard for $160. She also incurred medical expenses in the amount of $20 and rental car expenses of $306.13. Thus the value of Lewis's car, less the amount she received for it from the junkyard, plus her other related expenses, totaled $7,075.28. The trial court issued a new restitution order for that amount, and appellant has not raised any new challenge to the evidence supporting the new restitution award. The evidence supports restitution in the amount of $7,075.28 as ordered by the trial court on remand, and we modify the trial court's judgment to reflect the new amount.

We next address appellant's complaint that the trial court should not have ordered restitution to Lewis because Lewis is not a victim of the offense. Appellant asserts DWI does not have a victim. The Texas Court of Criminal Appeals has recently rejected this argument. *See Hanna v. State*, No. PD-0876-13, 2014 WL 1375456 (Tex. Crim. App. Apr. 9, 2014).

In *Hanna*, the defendant pleaded guilty to DWI and was ordered to pay restitution to a utility company whose telephone pole he struck and damaged while driving drunk. The court of appeals held that restitution was improper because DWI is a victimless crime. Thus, the utility company was not a victim of the DWI for which the defendant was convicted. *Id.* at *1. The court of criminal appeals disagreed, concluding that, when appropriate, restitution may be ordered in DWI cases. *Id.* at *5. Nothing in the code of criminal procedure requires, as a prerequisite to a restitution order, that a victim be alleged in the charging instrument. *Id.* The statute explicitly says that a defendant may be ordered to make restitution to "*any* victim of the offense." *Id.* Thus, any person who suffers property damage or personal injuries as the direct result of a defendant's DWI crime may be entitled to restitution even though that victim is not named in the DWI charging instrument. *Id.* Appellant's argument that Lewis is not entitled to restitution because she was not a victim of the DWI has no merit.

Appellant's final complaint regarding restitution is that it was for an offense for which she was not criminally responsible. Specifically, appellant contends there was no finding that she was at fault for the traffic accident that caused Lewis's property loss and expenses. *Hanna* is relevant to this issue as well.

In *Hanna*, despite ruling that the utility company could be a victim of DWI, the court of criminal appeals went on to affirm the court of appeals's holding that the restitution order was improper. The court specified that the State must prove by a preponderance of the evidence that the loss was a "but for" result of the criminal offense and resulted proximately, or foreseeably, from the offense. *Id.* at *4. The court concluded there was no evidence to show that the offense - the defendant's intoxicated driving - caused the damage to the utility pole. *Id.* at *6. The defendant pleaded guilty, so there was no evidence presented about "his driving, the accident, or his intoxication." *Id.* The only evidence about the cause of the accident was the defendant's

statement that "he must have hit a water puddle which caused him to lose control crashing into the pole." *Id.* The court held there was not sufficient proof that the defendant's intoxicated driving caused the accident with the pole. *Id.*

Unlike *Hanna*, here there was evidence of appellant's erratic driving, the way the accident occurred, and her intoxication. Lewis saw appellant swerving across the lanes of the tollway for an extended time period just prior to the accident. According to Lewis, appellant was "barreling down the exit" ramp behind Lewis when she hit Lewis's car. Lewis could smell alcohol coming from appellant's car. The officer who investigated appellant for DWI at the hospital also smelled alcohol and indicated appellant had bloodshot eyes and slurred speech. Appellant's performance on a sobriety test indicated to the officer that appellant did not have normal use of her physical and mental faculties due to alcohol. And the blood test results confirmed appellant's intoxication. Although appellant testified at punishment that Lewis cut her off, the trial court, as sole judge of the credibility of the witnesses, was free to disregard this testimony. While the trial court refused to make a finding of civil fault for the accident, it did state that the restitution "flowed from" the DWI. We conclude the State presented evidence from which the trial court could have properly determined that appellant's intoxicated driving caused the accident. Accordingly, we overrule appellant's sixth point of error.

### FINE IMPOSED

Finally, the State points out in its brief that the amount of the fine in the trial court's judgment does not accurately reflect the fine that was orally pronounced. The judgment imposes a $1,000 fine while the trial court orally imposed a $750 fine. When there is a conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls. *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). This Court has the power to correct and reform the judgment of the trial court to make the record

speak the truth when it has the necessary information to do so.  *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).  Accordingly, we modify the trial court's judgment to change the amount of the fine from $1,000 to $750.

As modified, we affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121186F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LAURA SANDERS, Appellant

No. 05-12-01186-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court
No. 1, Dallas County, Texas
Trial Court Cause No. MB10-52665.
Opinion delivered by Justice Brown.
Justices O'Neill and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** 1) to reflect that the amount of restitution is $7,075.28 and 2) to change the amount of the fine assessed from $1,000 to $750.

As modified, the judgment is **AFFIRMED**.

Judgment entered this 23rd day of April, 2014.

/Ada Brown/

ADA BROWN
JUSTICE

–16–