**Theodore FLORES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–03–00910–CR, 01–03–00911– CR, 01–03–00912–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 6, 2005.

Rehearing Overruled Feb. 16, 2005.

Discretionary Review Refused Sept. 14, 2005.

Clay S. Conrad, Lamson & Looney, P.C., Houston, TX, for Appellant.

Eric Kugler, Assistant District Attorney of Harris County, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

In three indictments, appellant, Theodore Flores, was charged with felon in possession of a firearm, possession of marihuana of more than five but less than 50 pounds, and possession with intent to deliver cocaine weighing more than four grams and less than 200 grams.[1] Appellant filed a motion to suppress the evidence—the cocaine, marihuana, and firearm that were the basis of the above listed indictments—that was seized from his residence. The motion to suppress asserted that appellant's constitutional rights were violated because the officers who executed the search warrant by forcibly entering his residence failed to announce their presence, or, in the alternative, announced their presence but failed to wait a sufficient length of time before forcibly entering the house. After conducting an evidentiary hearing, the trial court overruled appellant's motion to suppress the evidence. Appellant then pleaded guilty to each of the three offenses and true to the punishment enhancement paragraphs. Pursuant to an agreed plea bargain with the State, appellant was sentenced to 20 years in prison for the felon-in-possession-of-a-firearm, and 30 years in prison for each of the other two offenses. The trial court certified appellant's right to appeal the trial court's ruling on his motion to suppress evidence.

In a single point of error for each appeal, appellant contends that the trial court erred by denying his motion to suppress evidence in violation of his constitutional rights to be free from unreasonable searches and seizures.[2] We affirm.

## BACKGROUND

About a month before February 11, 2003, Deputy Willrich, a peace officer with the Harris County Sheriff's Office for 11 years, who is assigned to the narcotics division, learned that appellant was selling marihuana and possibly cocaine from his residence. On February 11, 2003, Deputy Willrich received the assistance of a confidential informant whom he believed to be credible and reliable because of past narcotics information obtained from the informant. The informant met appellant at his residence. Appellant displayed a brick of marihuana to the informant as a sample of what he had for sale, and appellant then returned the brick of marihuana into his residence. Appellant told the informant the price for the marihuana and the quan-

---

1. The felon-in-possession-of-a-firearm is trial court cause number 939103, which is appellate cause number 03–00910. The possession-of-marihuana is trial court cause number 939102, which is appellate cause number 03–00911. The possession-with-intent-to-deliver-cocaine is trial court cause number 939101, which is appellate cause number 03–00912. The indictment for felon in possession of a firearm contained only one punishment enhancement paragraph, but the other two indictments each contained two punishment enhancement paragraphs and an additional paragraph that asserted that appellant used or exhibited a deadly weapon, namely a firearm, during the commission of the marihuana and cocaine offenses.

2. See U.S. CONST. amends. IV, XIV. Appellant has not contended that the protections under the Texas Constitution exceed or differ from those provided by the Federal Constitution. See U.S. CONST. amend. IV, TEX. CONST. art. 1, § 9. Accordingly, we address his federal complaints only. See Arnold v. State, 873 S.W.2d 27, 33 (Tex.Crim.App.1993).

tity that he could deliver. The informant relayed to Deputy Willrich what she or he had observed at appellant's residence.

Deputy Willrich presented to a magistrate an affidavit for a search warrant for appellant's residence at 11,727 Boxhill in Houston, Harris County, Texas. The affidavit included the above stated information from the informant. The magistrate signed the warrant authorizing peace officers to conduct a search of appellant's residence.

The informant warned Deputy Willrich that the officers should be careful because appellant probably had a gun. The search warrant was silent concerning the informant's warning. The officers did not request and did not receive authorization from the magistrate to forcibly enter appellant's residence without first announcing their entry.

On the evening of February 11, 2003, peace officers with the Harris County Sheriff's Department met together about a mile from appellant's residence to discuss their strategy for the execution of the search warrant. When the officers arrived at appellant's residence, the officers formed a straight line of six people, one in front of the other, to execute the warrant. The person closest to the front door of the residence was Deputy Houston, who held the Moby, which is the battering ram for forcible entry into a residence. The second person in line was Deputy Cook, and the third person in line was Deputy Murr.[3] Both Deputy Cook and Deputy Murr are peace officers with over ten years' experience with the Harris County Sheriff's De-

partment. The last person in the line was Deputy Willrich.

Although neither Deputy Murr or Deputy Cook recalled seeing any motion sensor on the porch, Deputy Willrich testified that he saw "some type of security device at the front door and a ... motion-type detector." Deputy Willrich stated that he did not know about the motion sensor until the officers arrived at appellant's house to execute the search warrant. Deputy Willrich explained that, in his experience, suspects place motion detectors on the front of the house so that they can have time to "get their weapons and get ready to defend themselves." Deputy Willrich explained that he feared for his safety and the safety of the other officers because of the warning that appellant had a firearm, the knowledge, based on his training and experience, that appellant would most likely try to protect his narcotics, and the presence of the motion sensor.

Before entering the house, Deputy Cook knocked on the door to the residence. Deputy Cook testified that he "banged" on the door, waited a couple of seconds, "banged" on the door again, and when no one responded to the knocks at the door, the Moby was used to enter the door forcibly.[4] Deputy Cook also stated that he heard an unidentified officer announce, "Sheriff's Department." Neither Deputy Murr nor Deputy Wullrich recalled seeing or hearing the knocks to the door, nor hearing any announcement prior to their entry into the house. Appellant's wife testified that she never heard any announce-

---

3. Deputy Cook and Deputy Murr testified inconsistently concerning their distance from each other. Deputy Cook described Deputy Murr's location as several feet away from him and off of the porch because the officers tried to keep as many people as possible away from any potential line of fire from the front door. Deputy Murr, however, testified that she was

very close to Deputy Cook and could only see his back.

4. In Deputy Cooks's opinion, appellant had sufficient time to get from his bedroom to the front door to answer it, but appellant chose not to answer the door.

ments or any knocks to the door. The record shows that ten to 12 seconds passed from the time the officers approached the porch of the residence to the time of the forcible entry.

An alarm sounded when the officers entered the house. According to appellant's wife, she heard the house alarm sound when the officers entered into her house just as she and appellant were going to bed. She said that she and appellant arose from bed to find many people in the house shining flashlights and talking loudly.

Only four witnesses testified at the motion to suppress hearing: Deputy Willrich, Deputy Cook, Deputy Murr, and appellant's wife. The motion to suppress sought to have the trial court suppress the following evidence seized by the officers during the search of appellant's residence: about 15 pounds of marihuana, about one pound of cocaine, a firearm, and $3,355 in cash. After the trial court denied appellant's motion to suppress, the court made oral findings of fact on the record as follows: (1) the three officers are credible, (2) the testimony concerning the informant's warning that appellant probably had a gun is credible, (3) the testimony that the officers had a "specific concern" that "there was a weapon in the house and a danger to the officers who were going into the house" is credible, (4) "there was a knock and announce, and a knock and then the door was forced down within two to three seconds." *See State v. Groves,* 837 S.W.2d

103, 106 n. 5 (Tex.Crim.App.1992) (holding oral findings of fact can be considered as findings of fact).

In his sole point of error, appellant contends that the trial court erred by overruling his motion to suppress. Appellant contends that the officers failed to announce their presence prior to forcibly entering into his residence, and that no circumstances justified a forcible "no knock" unannounced entry. In the alternative, appellant contends that, if the officers knocked on the door and announced their presence, they waited an insufficient length of time before resorting to forcible entry.[5] We conclude that the circumstances here warranted an unannounced entry into appellant's residence, and, thus hold that the trial court properly denied appellant's motion to suppress.

### Motion to Suppress Standard of Review

▐ We review a trial court's ruling on a motion to suppress for abuse of discretion, and we review the record of the hearing on the motion in the light most favorable to the trial court's ruling. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex. Crim.App.2002); *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *Rivera v. State,* 808 S.W.2d 80, 96 (Tex. Crim.App.1991). Ruling on a motion to suppress lies within the sound discretion of the trial court. *Villarreal,* 935 S.W.2d at 138.

---

5. The Supreme Court recently held that a 15–to–20–second wait before a forcible entry into a residence satisfied the Fourth Amendment of the United States Constitution because 15 to 20 seconds "does not seem an unrealistic guess about the time someone would need to get in position to rid his quarters of cocaine." *United States v. Banks,* 540 U.S. 31, 40, 124 S.Ct. 521, 527, 157 L.Ed.2d 343 (2003). The court stated that the crucial fact in examining the police actions is not the time to reach the door, but rather the particular exigency claimed. *Id.* The court rejected set time guidelines that a police officer must wait before forcible entry into a residence. *Id.,* 540 U.S.at 35, 124 S.Ct. at 524. Because we conclude that an unannounced entry into the residence was justified, we need not reach the question addressed in *Banks* concerning whether the length of time between the knock or announcement and the forcible entry into the residence was reasonable.

██ At the hearing on the motion, the trial court is the sole judge of the credibility of the witnesses and decides the weight to give their testimony. *Id.; Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). We must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal,* 935 S.W.2d at 138; *see Romero,* 800 S.W.2d at 543.

██ When the trial court does not file findings of fact concerning its ruling on a motion to suppress, we assume that the court made implicit findings that support its ruling, provided those implied findings are supported by the record. *See Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim. App.2002). When the trial court does file findings of fact with its ruling on a motion to suppress, an appellate court does not engage in its own factual review, but determines only whether the record supports the trial court's fact findings. *Romero,* 800 S.W.2d at 543. Unless the trial court abused its discretion by making a finding not supported by the record, we will defer to the trial court's fact findings and not disturb the findings on appeal. *Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App. 1991). On appellate review, we address only the question whether the trial court properly applied the law to the facts. *Romero,* 800 S.W.2d at 543.

### Fourth Amendment Announcement Requirement

██ The Fourth Amendment guarantees that people shall be free from unreasonable searches and seizures. U.S. CONST. amend. IV. The knock-and-announce requirement forms a part of the Fourth Amendment's reasonableness inquiry. *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 1918, 131 L.Ed.2d 976 (1995). Police officers entering a dwelling generally must announce their intent to search before entering closed premises. *See id.,* 514 U.S. at 934, 115 S.Ct. at 1918.

██ The knock and announce requirement, however, is obviated under certain circumstances. Officers need not announce their intent to search before entry when officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or ... would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *United States v. Banks,* 540 U.S. 31, 36, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003) (citing *Richards v. Wisconsin,* 520 U.S. 385, 387–88, 117 S.Ct. 1416, 1418, 137 L.Ed.2d 615 (1997)). Officers are not required to knock and announce their presence before the entry either (1) when a magistrate authorizes the "no knock" entry, or (2) when, as here, the circumstances support a reasonable suspicion of exigency when the officers arrive at the door, although no magistrate has authorized the unannounced entry. *See id.,* 540 U.S. at 36–37, 124 S.Ct. at 525.

██ In determining whether the circumstances support a reasonable suspicion of exigency to justify an unannounced entry, we must examine the totality of the circumstances. *See id.,* 540 U.S. at 36, 124 S.Ct. at 525 (stating "We have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones."). The reasonable suspicion burden of proof to justify an unannounced entry is not high, but it requires that officers have specific and articulable facts that demonstrate a danger to the officer. *See Rich-*

*ards,* 520 U.S. at 394–95, 117 S.Ct. at 1421–22 (stating "The burden of showing a reasonable articulable suspicion of danger to make a no-knock entry is 'not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.'"). The reasonable suspicion standard is lower than the probable cause standard. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002).

▉▉▉▉ In determining whether reasonable suspicion exists, we look at the facts known to the officers in the events leading up to the entry into the residence and view those events from the standpoint of an objectively reasonable police officer. *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (1996) (stating "The principle components of a determination of reasonable suspicion ... will be the events which occurred leading up to the ... search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion ..."). In determining whether the officer acted reasonably, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific and reasonable inferences which he is entitled to draw from the facts in light of his experience. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

### Analysis

▉▉▉▉ Appellant contends that the informant's warning was insufficient because the informant was not sufficiently reliable or credible, and because the informant had insufficient information because the informant did not actually see appellant possess a gun and did not actually hear appellant threaten the officers. We conclude that the informant's warning was sufficient to constitute reasonable suspicion that appellant was probably armed and dangerous. In *Terry v. Ohio,* the Court stated, "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* Reasonable suspicion thus can exist without actual knowledge or observation of a gun, as long as the officer reasonably believed that his safety or that of others was in danger under the circumstances.[6] *See id.*

---

6. Appellant contends that the mere knowledge of the presence of a weapon, without more, is insufficient to establish the reasonable suspicion necessary to justify a no-knock entry. In support of his contention, appellant relies on *Ballard v. State,* 104 S.W.3d 372 (Tex.App.-Beaumont 2003, pet. ref'd). In *Ballard,* the court held that "the mere presence of a handgun ... is insufficient, as an exigent circumstance exception to the knock-and-announce rule, where the State does not also prove the authorities possessed information that the individual(s) subject to the warrant was likely to use the weapon, was likely to become violent, had a criminal record reflecting violent tendencies, or a verified reputation of a violent nature." *Id.* at 383 (citing *United States v. Bates,* 84 F.3d 790, 795–96 (6th Cir.1996)). Other courts have declined to follow *Ballard* by holding that the presence of a firearm in a residence is sufficient to justify an unannounced entry. *See Stokes v. State,* 978 S.W.2d 674, 675–77 (Tex.App.-Eastland 1998, no pet.) (gun in house sufficient for unannounced entry); *see Patterson v. State,* 138 S.W.3d 643, 648 (Tex.App.-Dallas 2004, no pet.) (weapons in house and surveillance equipment sufficient for unannounced entry); *see Klepper v. State,* No. 05–02–01283–CR, 2003 WL 22663508, at *2 (Tex.App.-Dallas 2003, pet. ref'd) (same); *see Collins v. State,* Nos. 03–02–00263–CR, 03–02–00264–CR, 2002 WL 31718039, at *3 (Tex.App.-Austin 2002, no pet.) (guns in house sufficient for unannounced entry). The officers here had more than knowledge of a "mere presence of a handgun"; they had a specific warning to be careful of appellant, knowledge that appel-

The officers executing the search warrant knew that (1) appellant probably possessed a firearm, and (2) the officers should be careful of appellant. The informant's warning was specific to appellant, and not a global statement that drug dealers generally possess firearms. The informant's warning did not state that appellant might possibly have a firearm, but instead that appellant probably was armed. Perhaps more importantly, the informant warned the officers to be careful of appellant, a statement that would reasonably lead a person to believe that appellant was dangerous. The officers here were acting on more than a mere hunch that appellant was dangerous and more than a mere suspicion that he might be armed because he was a drug dealer. The officers acted on information specific to appellant from an informant whom they believed was reliable and credible.[7] We cannot conclude that a reasonably objective officer should not have feared for his safety under these circumstances.

Although the officers were not told details about the warning, such as whether appellant had made specific threats against the officers, committed violent acts in the past, whether the informant had actually seen appellant in possession of a firearm, or why the informant believed appellant was probably armed, the officers knew that the informant was credible, reliable, and trustworthy based on their prior contacts with the informant.[8] It was therefore reasonable for the officers to heed the informant's warning by believing that appellant was probably armed and dangerous requiring that they "be careful" in their approach to his residence.

In addition to the information from the informant, Deputy Willrich testified that the porch to appellant's house had a motion sensor that caused a light on the porch to turn on when the officers arrived there.[9] An objectively reasonable peace officer could become more concerned for his safety upon finding such a motion sensor at the house of a person believed to be probably armed and dangerous. See Patterson v. State, 138 S.W.3d 643, 648 (Tex. App.-Dallas 2004, no pet.) (holding weapons in house and surveillance equipment sufficient for unannounced entry); see

lant probably had a gun, and knowledge of the motion sensor on the porch.

7. Compare Price v. State, 93 S.W.3d 358, 363 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (holding that testimony that people in possession of controlled substances normally possess firearms and should be considered armed and dangerous is insufficient to justify unannounced entry because information was not specific to the defendant).

8. The informant who gave the officers the warning to be careful of appellant is the same informant whom the magistrate had found sufficiently credible and reliable to authorize the search warrant of appellant's residence.

9. Officer Murr and Officer Cook did not recall seeing the motion sensor and both believed that the light on the porch was already on when the officers arrived at the house. The

trial court's findings of fact were silent on whether a motion sensor was on the porch of the house, but we must assume the court made implicit findings that support its ruling, provided those implied findings are supported by the record. See Maxwell v. State, 73 S.W.3d 278, 281 (Tex.Crim.App.2002). A sergeant who did not testify at the motion to suppress made the decision concerning the timing of the entry into the residence, and the record is silent concerning whether that sergeant observed the motion sensor on the porch. In our review, we must consider the facts known to the officers in the events leading up to the entry into the residence and view those events from the standpoint of an objectively reasonable police officer. See Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996). Thus, although the sergeant did not testify, the existence of the motion sensor was known to Deputy Willrich before entry.

*Klepper v. State,* No. 05–02–01283–CR, 2003 WL 22663508, at \*2 (Tex.App.-Dallas 2003, pet. ref'd) (same).

We hold that the officers had a reasonable suspicion that knocking and announcing their presence would be dangerous under the particular circumstances-a credible and reliable informant's warning for officers to be careful because appellant probably had a gun, and the presence of a motion sensor on the porch. *See Richards,* 520 U.S. at 387–88, 117 S.Ct. at 1418; *Stokes v. State,* 978 S.W.2d 674, 675–77 (Tex.App.-Eastland 1998, pet. ref'd) (holding that forcible entry into residence two seconds after announcement at door was reasonable under circumstances that officers had information from reliable informant that guns were in residence); *Collins v. State,* Nos. 03–02–00263–CR, 03–02–00264–CR, 2002 WL 31718039, at \*3 (Tex. App.-Austin 2002, no pet.) (holding that unannounced forcible entry reasonable under circumstances that informant saw marihuana and guns in residence within 72 hours of issuance of search warrant); *Patterson,* 138 S.W.3d at 648; *Klepper v. State,* 2003 WL 22663508, at \*2. Because the officers had specific and articulable facts that demonstrated a danger to the officers, the officers met the reasonable suspicion burden of proof, which is not high. *See Richards,* 520 U.S. at 394–95, 117 S.Ct. at 1421–22.

## Conclusion

We affirm the judgments of the trial court.