PD-0164-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/11/2015 11:35:14 AM
Accepted 2/12/2015 9:11:02 AM
ABEL ACOSTA
CLERK

# PD-0164-15

No. _____

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### EZEKIEL HALL
*Appellant*

**v.**

### THE STATE OF TEXAS
*Appellee*

On Petition for Discretionary Review from
Cause No. 14-13-01128-CR, affirming the conviction  in
Cause No. 1396361, in the 228th Judicial District Court of Harris County, Texas

### APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

February 12, 2015

ABEL ACOSTA, CLERK

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**NICOLAS HUGHES**
Assistant Public Defender
Harris County, Texas
TBN. 24059981
1201 Franklin St., 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax:    (713) 368-9278
nicolas.hughes@pdo.hctx.net

**COUNSEL FOR PETITIONER**

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:                                    EZEKIEL JOSHUA HALL


TRIAL PROSECUTOR:                    TARYN BRAUN
                                                      Assistant District Attorney
                                                      Harris County, Texas
                                                      1201 Franklin Street, 6th Floor
                                                      Houston, Texas 77002


APPELLATE PROSECUTORS:        ALAN CURRY
                                                      Assistant District Attorney
                                                      TYLER CUMMINGS
                                                      Intern
                                                      Harris County, Texas
                                                      1201 Franklin Street, 6th Floor
                                                      Houston, Texas 77002


DEFENSE ATTORNEY AT TRIAL:   WENDY BAKER
                                                      Attorney at Law
                                                      2211 Rayford Road, Ste. 111-135
                                                      Spring, Texas 77386


PRESIDING JUDGE:                      HON. MARC CARTER
                                                      Presiding Judge
                                                      228th District Court
                                                      Harris County, Texas
                                                      1201 Franklin Street, 16th floor
                                                      Houston, Texas 77002


ATTORNEY FOR APPELLANT:        NICOLAS HUGHES
                                                      Assistant Public Defender
                                                      Harris County, Texas
                                                      1201 Franklin St., 13th Floor
                                                      Houston, Texas 77002

# TABLE OF CONTENTS

Identity of Parties and Counsel................................................................................. ii

Table of Contents...................................................................................................... iii

Index of Authorities................................................................................................... v

Statement of the Case ............................................................................................... 1

Procedural Posture .................................................................................................... 1

Ground Presented for Review .................................................................................. 2

Reason for Review..................................................................................................... 2

      Texas Rule of Appellate Procedure 66.3(c): The Fourteenth Court of Appeals's
      decision presents an unreasonable extension of *Fernandez v. California.* ............... 2

Analysis ...................................................................................................................... 3

      Ground for Review: Did the Fourteenth Court of Appeals err when it failed to
      consider whether Ezekiel Hall was illegally arrested before concluding that
      third party consent to search Ezekiel Hall's room was effective? ........................ 3

            A. The Fourteenth Court of Appeals noted that Ezekiel Hall contested
            the legality of his arrest without addressing the issue ................................. 3

            B. A search made after an occupant has been rendered unable to refuse
            consent due to an unlawful arrest is unreasonable for the purposes of the
            Fourth Amendment ..................................................................................... 4

                  **1. Third-Party consent to a search**................................................ 4

                  **2. Third party consent to a search is ineffective against a
                  nonconsenting person**................................................................ 5

                  **3. Third party consent to a search when the nonconsenting
                  party has been arrested or detained and does not have the
                  present ability to refuse the search is only valid when the
                  arrest or detention is lawful**.......................................................... 6

**4. Third party consent to a search is ineffective when the nonconsenting party has been unlawfully arrested or detained and does not have the present ability to refuse the search**.................................................................................. 7

Prayer ............................................................................................. 8

Certificate of Service ...................................................................... 9

Certificate of Compliance................................................................ 9

Appendix ...................................................................................... 10

# INDEX OF AUTHORITIES

## Federal Cases

*Fernandez v. California*, 134 S. Ct. 1126 (2014) ................................................................. 2, 6

*Georgia v. Randolph*, 547 U.S. 103 (2006) ........................................................................ 5, 6

*McDougald v. Kennett*, No. 3:06-CV-00623-ECR (RAM), 2008 WL 4378073 (D. Nev. Aug. 12, 2008) .................................................................................................................. 5

*United States v. Matlock*, 415 U.S. 164 (1974) ..................................................................... 4

*Wong Sun v. United States*, 371 U.S. 471 (1963) .................................................................. 8

## State Cases

*Brick v. State*, 738 S.W.2d 676 (Tex. Crim. App. 1987) ....................................................... 7

*Browning v. Pend Oreille Cnty. Sheriff's Dep't*, No. CV-07-0286-JLQ, 2008 WL 3852693 (E.D. Wash. Aug. 14, 2008) ....................................................................................... 5

*California v. Jester*, No. H037592, 2014 WL 1990728 (Cal. Ct. App. May 16, 2014) ........ 5

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) ..................................................... 4

*Hall v. State*, No. 14-13-01128-CR (Tex. App.−Houston [14th Dist.] Jan. 22, 2015, pet. filed) ......................................................................................................................... 3

*Hooper v. Pearson*, No. 2:08−CV−871, 2010 WL 2990809 (D. Utah July 26, 2010) ......... 6

*Monge v. State*, 315 S.W.3d 35 (Tex. Crim. App. 2010) ...................................................... 7

*New Jersey v. Coles*, 95 A.3d 136 (N.J. 2014) ..................................................................... 8

*Ohio v. Lorenzo*, No. 2001−L−053 (Ohio Ct. App. July 3, 2002) ...................................... 5

## STATEMENT OF THE CASE

Ezekiel Hall was living with his grandparents Wilfred Griffith and JoAnne Griffith. On July 30, 2013, Ezekiel Hall began acting erratically, frightening his grandparents. The grandparents, not knowing how to respond to the situation, called 911 and requested help. When law enforcement arrived at the scene, Ezekiel Hall was violently and illegally arrested by Deputy Dillow when Deputy Dillow tased Ezekiel Hall to the point where he was placed in an intensive care unit. Subsequent to tasing Ezekiel Hall, Deputy Dillow obtained Wilfred Griffith's consent to search Ezekiel Hall's room and found a broken gun without a magazine unrelated to the mental health crisis. Ezekiel Hall was charged with "unlawful possession of firearm" due to his felon status.

## PROCEDURAL POSTURE

On August 9, 2013, Ezekiel Hall was indicted for unlawful possession of a firearm due to his status as a felon. (C.R. at 11). Ezekiel Hall litigated a motion to suppress by affidavits, and the trial court denied the motion. (C.R. at 15-19). Subsequent to the denial of the motion to suppress, Ezekiel Hall pled guilty to unlawful possession of a firearm and was sentenced to three years in prison. (C.R. at 41-47). Ezekiel Hall appealed his conviction, and on January 22, 2015, the Fourteenth Court of Appeals affirmed Ezekiel Hall's conviction.

1

Did the Fourteenth Court of Appeals err when it failed to consider whether Ezekiel Hall was illegally arrested before concluding that third party consent to search Ezekiel Hall's room was effective?

## REASON FOR REVIEW

**Texas Rule of Appellate Procedure 66.3(c): The Fourteenth Court of Appeals's decision presents an unreasonable extension of *Fernandez v. California.***

*Fernandez v. California* holds that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *Fernandez v. California*, 134 S. Ct. 1126, 1133 (2014). However, *Fernandez's* holding that third party consent is valid against a nonconsenting person who has been arrested hinges upon the legality of the arrest or detention of the nonconsenting person: "an occupant who is absent due to a *lawful* detention or arrest stands in the same shoes as an occupant who is absent for any other reason." *Fernandez v. California*, 134 S. Ct. at 1134. As the Fourteenth Court of Appeals reached the conclusion that Wilfred Griffith's consent to search Ezekiel Hall's room was valid without determining whether Ezekiel Hall was illegally detained, its decision conflicts with *Fernadez*.

**Ground for Review: Did the Fourteenth Court of Appeals err when it failed to consider whether Ezekiel Hall was illegally arrested before concluding that third party consent to search Ezekiel Hall's room was effective?**

> **A. The Fourteenth Court of Appeals noted that Ezekiel Hall contested the legality of his arrest without addressing the issue**

In a footnote, the Fourteenth Court of Appeals noted that Ezekiel Hall challenged the arrest in this case:

> "Appellant argues that "[e]xcessive unreasonable force is not a valid means of obtaining evidence." See *Hereford v. State*, 339 S.W.3d 111, 120 (Tex. Crim. App. 2011) (acknowledging when unreasonable means, such as excessive force, are used to obtain evidence, evidence obtained by such means must be suppressed); *id.* at 125 (concluding officers' use of Taser to force defendant to open mouth and to retrieve cocaine was excessive and unreasonable and defendant's motion to suppress should have been granted). Appellant also contends that "it seems unreasonable and unconstitutional that evidence found in the aftermath of the police - created emergency … be admitted against [appellant]." See *Kentucky v. King*, 131 S. Ct. 1849, 1858 (2011) (acknowledging exception to warrant requirement applies when exigent circumstances require warrantless entry and police did not create exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment).

*Hall v. State*, No. 14-13-01128-CR at *10 n. 10(Tex. App.−Houston [14th Dist.] Jan. 22, 2015, pet. filed) (mem. op., not designated for publication). However, the Court of Appeals did not address either argument because police obtained the evidence from Wilfred Griffith and not Ezekiel Hall. *Id.*

**B. A search made after an occupant has been rendered unable to refuse consent due to an unlawful arrest is unreasonable for the purposes of the Fourth Amendment**

**1. Third-Party consent to a search**

It has long been established that a person with "common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 169–172 (1974). Searches made pursuant to the consent of a third party with common authority over the premises or effects is deemed reasonable as "any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Welch v. State*, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002). Although there was a dispute over what level of control Wilfred Griffith exerted over Ezekiel Hall's room, the trial court determined that Wilfred Griffith was not excluded from Ezekiel Hall's room. (R.R. at 10). Given that the trial court's findings are entitled to deference, Ezekiel Hall concedes that the question on appeal becomes whether or not the facts of this case fall within the scope of the doctrine of third party consent to search. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (holding that on mixed questions of law and fact, a trial court's determination of facts is entitled to deference).

4

### 2. Third party consent to a search is ineffective against a nonconsenting person

The broadest exception to the doctrine of third party consent to search involves when the person whose property or effects are to be searched is physically present and objects to the search. *Georgia v. Randolph*, 547 U.S. 103, 122–123 (2006). Indeed, "the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." *Id.* at 114. In the case at hand, Deputy Dillow stated that Ezekiel Hall continued to shout expletives at him while Deputy Dillow asked Wilfred Griffith permission to search Ezekiel Hall's room. (C.R. at 37). While there are many meanings of the phrase "fuck you," there is no meaning and no context within this case which would imply anything other than Ezekiel Hall's refusal to give consent to search.[1] The

---

[1] *See Ohio v. Lorenzo*, No. 2001–L–053, 2002 WL 1446667, 3 (Ohio Ct. App. July 3, 2002) (not designated for publication) ("fuck you" was not merely an insult to the officer, but a refusal to comply with his orders);
*McDougald v. Kennett*, No. 3:06-CV-00623-ECR (RAM), 2008 WL 4378073, 8 (D. Nev. Aug. 12, 2008) (not designated for publication) ("fuck you" deemed a refusal to comply with law enforcement's request for identification);
*California v. Jester*, No. H037592, 2014 WL 1990728, 2 (Cal. Ct. App. May 16, 2014) (not designated for publication) ("fuck you" deemed a refusal to submit to a chemical test);
*Browning v. Pend Oreille Cnty. Sheriff's Dep't*, No. CV-07-0286-JLQ, 2008 WL 3852693, 9 (E.D. Wash. Aug. 14, 2008) (not designated for publication) (Repeated use of "fuck you" deemed a refusal to desist);

chronology in the record implies that Deputy Dillow searched Ezekiel Hall's room even as Ezekiel Hall objected to the search. Such a search would be a clear violation under the Fourth Amendment under *Randolph v. Georgia* and Wilfred Griffith's consent to search would be constitutionally ineffective. *Georgia v. Randolph*, 547 U.S. at 122–123.

### 3. Third party consent to a search when the nonconsenting party has been arrested or detained and does not have the present ability to refuse the search is only valid when the arrest or detention is lawful

*Fernandez v. California* carves a narrow exception to *Randolph v. Georgia*'s prohibition against searching a house over a nonconsenting party's objection: where the nonconsenting occupant has been lawfully detained or arrested and has been removed from the house, the third party may consent to a search even over the nonconsenting party's objection. *Fernandez v. California*, 134 S. Ct. 1126, 1134 (2014). However the lynchpin of *Ferdinandez v. California* is the legality of the arrest or detention, as the Supreme Court found no justification to treat a person who had been lawfully detained or arrested differently than a person arrested for any other reason. *Id.* Here, there has been no determination whether or not Ezekiel Hall's

---

*Hooper v. Pearson*, No. 2:08–CV–871, 2010 WL 2990809, 3–4 (D. Utah July 26, 2010) (not designated for publication)("fuck you" deemed refusal to give consent to submit to a urine test).

6

original encounter with Deputy Dillow amounted to an illegal arrest or illegal detention. On Appeal, Ezekiel Hall advanced several reasons why the arrest was illegal, including the use of excessive force and the failure to make a showing that Deputy Dillow had probable cause to arrest Ezekiel Hall at the time Deputy Hall tasered Ezekiel Hall until he collapsed. Even assuming arguendo that Ezekiel Hall was absent when Deputy Dillow sought consent to search the room, the Courts must address the legality of Ezekiel Hall's arrest before addressing Wilfred Griffith's consent to search.

**4. Third party consent to a search is ineffective when the nonconsenting party has been unlawfully arrested or detained and does not have the present ability to refuse the search**

**a. When law enforcement illegally arrests a nonconsenting party and takes advantage of the nonconsenting party's absence to obtain third party consent to search, it exploits the "fruit of the poisonous tree."**

"The 'fruit of the poisonous tree' doctrine generally precludes the use of evidence, both direct and indirect, obtained following an illegal arrest." *Monge v. State*, 315 S.W.3d 35, 40 (Tex. Crim. App. 2010). Absent sufficient attenuation from the taint of the initial illegal arrest, even voluntary consent is rendered constitutionally infirm. *Brick v. State*, 738 S.W.2d 676, 679–680 (Tex. Crim. App. 1987). Presuming that police unlawfully arrested and removed a person who refused consent to a search

7

and immediately asked a third party for consent to search, there can be no attenuation of the taint of the unlawful arrest. *Wong Sun v. United States*, 371 U.S. 471 (1963) (evidence must be excluded unless it is purged of the taint of the primary illegality). "As the United States Supreme Court's Fernandez opinion makes clear, valid third-party consent is subject to the exception that the third party's consent cannot be manufactured through the unlawful detention of the defendant." *New Jersey v. Coles*, 95 A.3d 136, 150 (N.J. 2014).

**PRAYER**

Ezekiel Hall asks this Court reverse the decision rendered by the Fourteenth Court of Appeals and remand the case for consideration of whether Ezekiel Hall's arrest was unlawful, and if so, whether Wilfred Griffith's consent to search Ezekiel Hall's room was valid in light of the unlawful arrest.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas


**/s/** Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender
Harris County Texas
1201 Franklin Street, 13th Floor
Houston Texas 77002
(713) 368-0016
(713) 386-9278 fax
TBA No. 24059981
nicolas.hughes@pdo.hctx.net

## CERTIFICATE OF SERVICE

I certify that a copy of this Petition for Discretionary Review (Hall) has been served upon the Harris County District Attorney's Office — Appellate Section and the State Prosecuting Attorney, on this February 11, 2015, by electronic service.

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the page and word count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 1,598 words, excluding sections not calculated under Tex. R. App. P. 9.4(i)(1).

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

**APPENDIX**

A. *Hall v. State*, No. 14-13-01128-CR (Tex. App.−Houston [14th Dist.] Jan. 22, 2015, pet. filed) (mem. op., not designated for publication).)



In The

# Fourteenth Court of Appeals

### NO. 14-13-01128-CR

### EZEKIEL JOSHUA HALL, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1396361**

## M E M O R A N D U M   O P I N I O N

In one issue, appellant Ezekiel Joshua Hall complains of the trial court's denial of his motion to suppress evidence he contends was unlawfully seized pursuant to a warrantless search without consent to search his bedroom, through the use of excessive force, and "as a result of a police-created exigency." Appellant's grandfather allowed a police officer to enter appellant's bedroom in the house appellant and his grandparents shared. The evidence was in plain view.

Concluding that appellant's grandfather had actual authority to consent to the search of appellant's bedroom and that the seizure was reasonable under the Fourth Amendment, we affirm.

## *Background*

Appellant's grandparents held a family gathering one evening. After the guests left, appellant began acting erratically, took off his clothes, and proclaimed to his grandparents that Jesus Christ was returning for them at midnight. His grandparents, being concerned for his wellbeing and their own, called the police for help.[1] An officer arrived on the scene, and his incident report and affidavit were filed along with the motion to suppress.

According to the officer, when he arrived on the scene, appellant's grandfather told him that appellant had smoked cigarettes dipped in formaldehyde and that he was afraid appellant was going to hurt them.[2] While the officer was speaking with the grandfather in the garage, appellant came into the garage from the house, wearing only an ankle monitor.[3] He was sweating profusely and had a blank stare. He was walking toward the officer, "pointing his . . . hand at [the officer] like he was shooting a gun" and swearing at the officer. The officer

---

[1] Appellant's grandfather submitted an affidavit in support of the motion to suppress in which he attested, "I called the police in an effort to have my grandson seen by a mental health professional because it was my belief that he was a danger to himself. I was not concerned at any time about my safety or the safety of any other individual." The incident report included a statement from the arresting officer in which he noted, "The call slip noted the reportee's grandson was somewhat violent and would not leave the grandparents alone." The officer further attested that the grandfather was "scared that [appellant] was going to hurt them so he called the police."

[2] According to the officer, appellant's grandfather informed him that appellant's other grandmother had been at the family gathering and was going to smoke a cigarette that she got from appellant's cigarette box. The cigarettes were wet and had a bad odor, so she threw them away.

[3] Appellant's grandfather explained that appellant was wearing the monitor because he was on parole.

2

ordered appellant to lie down several times, but he kept walking toward the officer and repeating the expletive, even after his grandfather attempted to stop him.

The officer noted, "[b]ased upon [appellant's] actions and demeanor, I believed him to be under the influence of a controlled substance. I also believed he was going to become violent and possibly try to assault me or [his grandfather] because of his unusual and bizarre behavior." As appellant walked toward the officer, the officer "tased" appellant to no effect. The officer tased appellant a second time, and appellant fell but tried to stand again.

Appellant kept attempting to stand, repeating the expletive, and making a shooting hand gesture at the officer. Ultimately, appellant was able to get up and walk back toward the entrance to the house. The officer stated,

> I knew that [appellant's] grandmother was inside the residence and I did not know if he might injure her, so I ran up to him and used a Taser drive [to] stun him on his upper back area, while pushing him to the ground. He finally lay still on a pile of boxes as [another officer] arrived.

EMS personnel arrived and took appellant to the hospital where he later tested positive for cannabis, cocaine, and PCP.[4] Meanwhile, the officer spoke with appellant's grandfather again, who informed the officer that appellant had a pistol in his bedroom that the grandfather did not want in the house.[5] The officer attested, "I asked [the grandfather] where [appellant's] bedroom was and he told me to follow him. I asked [the grandfather] if it was normal for him to go into [appellant's] room and he told me that it was his house so he goes into the room

---

[4] Appellant was in the intensive care unit in the hospital for eight days. It is not clear from the record whether appellant's injuries were caused by the Taser, the drugs, or some combination.

[5] The grandfather told the officer that he was scared about appellant's having the pistol because two days before, appellant had been cleaning it and fired a round into the ceiling. The State's forensic lab report indicated that the pistol had a broken firing pin and could not fire.

3

whenever he wants." Appellant's grandfather also informed the officer that appellant had moved in two months before and was not paying rent.[6] The officer followed the grandfather through appellant's open bedroom door and saw the pistol sitting on the dresser.[7]

After appellant was charged with unlawful possession of a firearm by a felon, he moved to suppress evidence that he was in possession of the pistol on the basis that it was seized in violation of state and federal law. After the trial court denied his motion, appellant pleaded guilty, and the trial court sentenced him to three years' confinement.

## *Discussion*

In his sole issue, appellant contends that the trial court erred by refusing to suppress the evidence because it was obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures on the grounds that the evidence was unlawfully seized without a warrant and without consent to search, through the use of excessive force in appellant's capture and arrest, and "in the aftermath of a police-created healthcare emergency." Because we conclude the arresting officer had consent to search appellant's bedroom and seizure of the weapon was reasonable under the Fourth Amendment, we need not address appellant's other grounds complaining of the trial court's denial of his motion.

We review a trial court's ruling on a motion to suppress under a bifurcated

---

[6] Appellant's grandfather later attested that appellant had been paying $200 in rent and $200 in utilities per month.

[7] The record does not indicate at what point appellant was under arrest, although he had been handcuffed by the time EMS personnel arrived. The officer attested that appellant was "eventually detained and transported to the hospital by EMS." The officer notes in the incident report that appellant was charged with felon in possession of a firearm after the officer retrieved the pistol from appellant's bedroom.

4

standard, giving almost total deference to the trial court's findings of historical fact and reviewing de novo the trial court's application of the law. *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The trial court is the sole finder of fact and judge of the credibility of witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). When the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports these factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). A trial judge's findings on a motion to suppress may be written or oral.[8] *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006).

## I.     Reasonableness of Search

The Fourth Amendment provides protection from "unreasonable" searches and seizures by government officials. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). Searches conducted without a warrant are generally deemed unreasonable. *Id*. Several well-established exceptions, however, apply to the warrant requirement, such as when a person voluntarily consents to a search. *Id*. Whether it is reasonable under the Fourth Amendment for an officer to rely on consent is a question to be determined by examining the totality of the circumstances. *Id*.

A third party can consent to a search to the detriment of another's privacy

---

[8] While neither party moved for written findings of fact and conclusions of law, and none were filed, it is apparent from the record that the trial court intended for its findings and conclusions to be expressed via its oral pronouncements. In reviewing a motion to suppress, oral findings of fact can be considered as findings of fact on the record and given due deference. *See, e.g., State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (stating that the trial court's findings and conclusions from the suppression hearing need to be recorded in some way, whether written out and filed by the trial court or stated on the record at the hearing); *Flores v. State*, 177 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (reviewing trial court's oral findings of fact on a motion to suppress).

interest if the third party has actual authority over the place or thing to be searched. *Id*. The third party may, in his own right, give valid consent when he and the absent, non-consenting person share common authority over the premises or property. *Id*. Although property interests are relevant to this determination, the commonality of authority to consent is not determined solely by the law of property. *Id*. Instead, common authority is shown by mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *Id*. at 560-61.

A defendant who has thus assumed this risk may not complain of such a permitted search under the Fourth Amendment. *Id*. at 561. Actual authority is not necessarily a prerequisite for a valid consensual search. *Id*. When an officer reasonably, though erroneously, believes that a third party purporting to provide consent has actual authority over the place or thing to be searched, apparent authority exists, and the purported consent from the third party can serve to make the search reasonable. *Id*.

The State has the burden to show by a preponderance of the evidence that the person who consented to the search had actual or apparent authority to consent. *Id*. at 561-62. To meet its burden, the State must provide evidence that a third party either had mutual access to and control over the place that was searched or that the officers conducting the search reasonably believed facts provided to them by a third party that would have been legally sufficient to justify a search as reasonable. *Id*.

Whether a third party had actual authority to consent to a search of another's property and whether an officer was reasonable in finding that a third party had

6

apparent authority to consent are mixed questions of law and fact that we examine de novo. *Id.* at 559-60. The trial judge made the following oral findings during the suppression hearing in relevant part: (1) the officer had consent to enter the home; (2) the grandfather could consent to allow the officer to enter appellant's bedroom as the grandfather owned the home; and (3) even if appellant paid rent and utilities, no evidence was presented that the grandfather "in any way was excluded from the room. . . . [C]learly, the grandfather walked in there as if there was no bar to going into [appellant's] room."

The Court of Criminal Appeals has squarely addressed the issue presented here. *See id*. at 562. In *Hubert*, the defendant's grandfather owned the home where the defendant was staying. *Id*. The trial court implicitly found that (1) the grandfather was the exclusive owner of the home, (2) officers knew the grandfather did not "live" or sleep in the bedroom where appellant was staying, and (3) the grandfather opened the door to the defendant's room for officers to search it. *Id*.

The Court of Criminal Appeals noted the fact that the grandfather did not sleep in the bedroom had some tendency to show that the grandfather did not have mutual use of the bedroom. *Id*. However, that fact alone did not negate the grandfather's authority to consent to the search. *Id*. at 562-63. The court acknowledged that, although a determination of joint access is always a fact-specific inquiry, when, as here, the defendant lives "with a parent or other close relative, and the relative consents to a search of defendant's bedroom," courts may presume the relative has sufficient common authority over the bedroom to authorize the consent to search. *See id.* at 563. The defendant may overcome the presumption by presenting evidence that he has exclusive possession of the searched premises. *Id*.

In *Hubert*, as here, the defendant's bedroom door was not locked. *See id*.

7

Although the defendant's girlfriend testified that the grandfather was not allowed into the defendant's bedroom without permission, the trial court was entitled to disbelieve her. *Id*. Viewing the facts in the light most favorable to the trial court's ruling, the court concluded that the grandfather had actual authority to consent to the search because the defendant lacked any proprietary or possessory interest in the house and assumed the risk that his grandfather might permit a search of any area of the house, including the defendant's bedroom, that the defendant might be using for criminal purposes. *Id*. at 564.

The facts of this case are similar. The officer noted in his incident report and affidavit that the grandfather told him he owned the house, went into the bedroom whenever he wanted, and appellant did not pay rent. The trial court was entitled to disbelieve the grandfather's later testimony that appellant had paid rent and utilities. *See id*. at 563. The grandfather led the officer into appellant's room, where the pistol was lying on the dresser. The bedroom door was unlocked and open. Appellant did not present any evidence that his grandfather did not have mutual access to his bedroom. Based on these facts, the trial court could conclude that the grandfather had actual authority to consent to the search.[9]

## II.    Reasonableness of Seizure

Appellant argues the officer's warrantless seizure of the pistol also runs afoul of the Fourth Amendment because appellant did not consent to the search of his bedroom and the incriminating character of the pistol was not immediately apparent, as the officer did not know whether appellant lawfully could possess a firearm when he seized it. Plain view seizures are warrantless seizures of personal

---

[9] The State alternatively argues that appellant's grandfather had apparent authority to consent to the search. Because we hold that he had actual authority, we need not determine whether the officer's conduct was justified by the grandfather's apparent authority. *See Hubert*, 312 S.W.3d at 564.

property. *See State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013). "The 'plain view' doctrine permits an officer to seize contraband which he sees in plain sight or open view if he is lawfully where he is." *Id.* For an officer to justifiably seize an object in plain view, (1) the officer must lawfully be where the object can be plainly viewed; (2) the incriminating character of the object must be immediately apparent; and (3) the officer must have the right to access the object. *Id.*

As set forth above, appellant's grandfather had actual authority to enter appellant's bedroom and consent to the search. Accordingly, the officer's presence in appellant's bedroom where the pistol was in plain view on the dresser was lawful. Second, the incriminating nature of the pistol was immediately apparent to the officer because appellant was wearing an ankle bracelet and his grandfather had informed the officer that appellant was on parole. *See Ford v. State*, 179 S.W.3d 203, 211 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("Because [officers] knew appellant was a felon, it was immediately apparent the gun was contraband."). Finally, the officer had the right to access the pistol because the warrantless search was rendered reasonable by the consent exception to the warrant requirement. *See Betts*, 397 S.W.3d at 206 (noting officers have right to access object when warrantless search of property is rendered reasonable under some rule other than plain view doctrine).

Viewing the evidence in the light most favorable to the trial court's findings, we conclude that the State presented sufficient evidence that appellant's grandfather had actual authority to consent to the search of appellant's bedroom and the seizure of the weapon was reasonable under the plain view doctrine. *See Hubert*, 312 S.W.3d at 564; *see also Ford*, 179 S.W.3d at 211. Because the consent exception applies to the warrant requirement, we need not address whether other

exceptions to the warrant requirement apply in this case.[10] We overrule appellant's sole issue.

We affirm the judgment of the trial court.

/s/    Martha Hill Jamison
          Justice

Panel consists of Justices Jamison, Busby, and Brown.
Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[10] Appellant argues that "[e]xcessive unreasonable force is not a valid means of obtaining evidence." *See Hereford v. State*, 339 S.W.3d 111, 120 (Tex. Crim. App. 2011) (acknowledging when unreasonable means, such as excessive force, are used to obtain evidence, evidence obtained by such means must be suppressed); *id*. at 125 (concluding officers' use of Taser to force defendant to open mouth and to retrieve cocaine was excessive and unreasonable and defendant's motion to suppress should have been granted). Appellant also contends that "it seems unreasonable and unconstitutional that evidence found in the aftermath of the police-created emergency . . . be admitted against [appellant]." *See Kentucky v. King*, 131 S. Ct. 1849, 1858 (2011) (acknowledging exception to warrant requirement applies when exigent circumstances require warrantless entry and police did not create exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment). However, under the facts of this case, force was not used to obtain the evidence, and the evidence was not seized as a result of a police-created exigency. Appellant's grandfather volunteered the information about appellant's possession of the weapon and took the officer into appellant's bedroom.